SARA ENGLISH, EMPLOYEE v. J. P. STEVENS & CO., EMPLOYER, LIBERTY MUTUAL INSURANCE CO., CARRIER

No. 8910IC421

(Filed 15 May 1990)

**Master and Servant § 68.4 (NCI3d) — workers' compensation — compensable injury — subsequent pregnancy — cesarean section because of original injury — compensation for scar and additional expenses**

Where plaintiff became pregnant after suffering a compensable back injury, the child was delivered by cesarean surgery rather than natural childbirth solely because of her compensable back injury, and plaintiff became pregnant because of a defect in her method of birth control, plaintiff was entitled to compensation for the increased medical expenses and scar caused by the cesarean surgery since (1) the surgery and any accompanying injuries or damages were the direct and natural result of the original compensable injury, and (2) plaintiff's pregnancy was not an independent intervening cause attributable to plaintiff's own intentional conduct.

**Am Jur 2d, Workmen's Compensation § 229.**

APPEAL by plaintiff from order of North Carolina Industrial Commission filed 16 December 1988. Heard in the Court of Appeals 13 October 1989.

*Smith, Patterson, Follin, Curtis, James & Harkavy, by Henry N. Patterson, Jr., Jonathan R. Harkavy and Leto Copeley, for plaintiff-appellant.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by C. D. Taylor Pace, for defendant-appellees.*

**ENGLISH v. J. P. STEVENS & CO.**

[98 N.C. App. 466 (1990)]

GREENE, Judge.

Plaintiff appeals the opinion and award of the North Carolina Industrial Commission ("Commission"), denying plaintiff's workers' compensation claim.

The undisputed evidence shows that plaintiff was an employee dye machine operator of defendant J. P. Stevens & Company ("Company") when she suffered a lower back strain at work on 7 January 1986. Plaintiff continued to work from 7 January 1986, through 9 March 1986, and was evaluated as temporarily totally disabled on 10 March 1986. Company, through its insurance carrier, defendant Liberty Mutual Insurance Company, paid plaintiff temporary total disability benefits from 7 March 1986 until 4 January 1987, pursuant to an Agreement for Compensation for Disability, executed between the parties and approved by the Commission.

At the time of her injury, plaintiff was thirty years old and had a six-year-old child which had been delivered vaginally by natural childbirth. Plaintiff submitted evidence showing that prior to her injury, in December 1985, plaintiff had consulted her doctor for a possible pregnancy, despite plaintiff's use of an intrauterine device (IUD) as birth control. Plaintiff's doctor removed the IUD, determined that plaintiff was not pregnant, and recommended that plaintiff use another form of birth control, such as condoms. Subsequent to her injury and before plaintiff's disability was determined, plaintiff's physician did not restrict her in any physical activities. In approximately February 1986, plaintiff became pregnant while her partner was using condoms for birth control. Plaintiff introduced into evidence her statement: "The pregnancy resulted from the failure of the condom and was not intentional on my part."

In July 1986, an orthopedic surgeon evaluated plaintiff and determined that plaintiff had a herniated nucleus pulposus (disc, in lay terminology), but could not confirm the diagnosis because radiographic (x-ray) diagnostic procedures might affect plaintiff's pregnancy adversely. Additionally, the orthopedic surgeon recommended cesarean section surgery because plaintiff risked further damage to the disc if she attempted labor and natural childbirth. The surgeon recommended childbirth surgery solely to protect plaintiff's injured back. Plaintiff was delivered of a child by cesarean section surgery on 29 October 1986. Plaintiff introduced evidence to show that the costs of childbirth surgery were higher than

the costs for natural childbirth because of two additional days of hospital stay, the surgery, anesthesia and medications.

After the birth of her child, plaintiff underwent diagnostic evaluation of her back, and the surgeon assessed plaintiff as having a five percent total disability in her lower back. Pursuant to a Supplemental Memorandum of Agreement, which the parties executed on 4 February 1987, the parties agreed that the five percent disability of the plaintiff's back occurred on 7 January 1986, and Company paid plaintiff additional compensation. Later in 1987, plaintiff applied for workers' compensation benefits for expenses arising out of her childbirth surgery which exceeded the natural childbirth expenses, alleging that the increased expenses were entirely due to her back injury. Plaintiff also requested compensation for permanent weakness in her abdominal muscles, caused by the scar arising from the surgery which would necessitate surgical deliveries of all future pregnancies.

Plaintiff's claim came on for hearing before a Deputy Commissioner. Plaintiff offered the physician's expert testimony to show that the scar resulting from the surgery offered plaintiff and her unborn child "a very high risk" if she were to become pregnant in the future "because as the muscles of the womb [stretch] the scar [which] is the weakest point in the muscle and there is the danger that it could rupture and the baby would be in the abdomen . . ." Plaintiff requested benefits or compensation for the scar produced by the surgery. Plaintiff also testified that her physicians did not counsel her to refrain from intercourse or from getting pregnant prior to her pregnancy. Defendants introduced no evidence. The Deputy Commissioner entered the following:

*Findings of Fact*

. . . .

3. The plaintiff could not go through the trial of labor in a natural delivery due to the herniated nucleus pulposus since the labor may push out the disc material even more thereby causing a drop foot or a cauda equina syndrome. Based on the recommendation of Dr. Seidel that the child be delivered by cesarean section[,] Dr. M. I. Ammar, an obstetrician, delivered the child by said surgery on October 29, 1986. The child would have been delivered by natural birth if the plaintiff had not sustained the back injury.

ENGLISH v. J. P. STEVENS & CO.

[98 N.C. App. 466 (1990)]

. . . .

8. The plaintiff's pregnancy which occurred subsequent to the compensable back injury on January 7, 1986[,] and the resulting consequence thereof was not a direct and natural consequence of the compensable back injury. The pregnancy was an independent intervening cause attributable to the plaintiff's own intentional conduct.

### Conclusions of Law

The plaintiff's pregnancy, which occurred subsequent to the compensable back injury on January 7, 1986, and the resulting consequence thereof was not a direct and natural consequence of the compensable back injury. The pregnancy was an independent intervening cause attributable to the plaintiff's own intentional conduct. The plaintiff is not entitled to the benefits under the Workers' Compensation Act for the cesarean section and the resulting consequences. G.S. 97-2(6), Larson's Work[men's] Compensation Law, Section 13.

The Deputy Commissioner denied plaintiff's claim.

Plaintiff appealed to the Commission, stating as grounds that neither the evidence nor the law supported the Deputy Commissioner's findings of fact and conclusions of law that plaintiff's pregnancy was an "independent intervening cause" attributable to her own intentional conduct which rendered noncompensable her scar and increased medical bills. Plaintiff asserted that the scar and costs of the surgery were direct and natural consequences of her back injury.

As an alternative request for relief, plaintiff filed a motion to remand the claim for taking of additional evidence on the issue of whether plaintiff's "intentional conduct" caused plaintiff's pregnancy, if the Commission determined that the Deputy Commissioner's Opinion and Award should stand. Plaintiff offered her affidavit to show that she became pregnant because of a defect in her method of birth control and not by her "intentional conduct."

The Commission adopted the findings of fact and conclusions of law by the Deputy Commissioner, determining that the facts were supported by the evidence and the conclusions were without prejudicial error. The Commission denied plaintiff's motion to remand for additional evidence.

The dispositive issue is whether plaintiff's injuries resulting from cesarean surgery, necessitated by an injury compensable under the Workers' Compensation Act, are compensable, when plaintiff's pregnancy occurred after the initial compensable injury.

The general rule is:

[w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause, attributable to claimant's own intentional conduct.

1 *Larson's Workmen's Compensation Law* § 13, at 3-502 (1989); cited by *Starr v. Charlotte Paper Co.*, 8 N.C. App. 604, 611, 175 S.E.2d 342, 347 (1970); *Heatherly v. Montgomery Components, Inc.*, 71 N.C. App. 377, 379-80, 323 S.E.2d 29, 30, *review denied*, 313 N.C. 329, 327 S.E.2d 890 (1985).

I

Natural Consequence

All the evidence before the Commission supports the conclusion that the cesarean surgery was performed on plaintiff solely because of the initial compensable injury to plaintiff's back. The testimony of plaintiff's treating physician was that natural childbirth would further damage plaintiff's back. Because the parties do not dispute evidence that plaintiff's back injury was work-related and therefore compensable, we determine that the cesarean surgery and any accompanying injuries or damages are the direct and natural result of the original compensable injury.

We find this case similar to *Heatherly*. In *Heatherly*, the claimant injured his right middle tibia (leg bone) in a work-related event for which he was compensated. Several months later, claimant reinjured the same tibia under circumstances which the Court determined were compensable only if the second injury was the direct and natural result of the initial work-related injury. This Court held that the second injury was a "direct and natural result" of the first injury, since the first injury left the tibia in a weakened condition, and the second injury would not have occurred absent the first injury. *Heatherly*, at 381, 323 S.E.2d at 31. *See also Mayo v. City of Washington*, 51 N.C. App. 402, 276 S.E.2d 747 (1981) (reinjury of claimant's knee was a direct and natural result of

**ENGLISH v. J. P. STEVENS & CO.**

[98 N.C. App. 466 (1990)]

earlier compensable injury); *Starr*, at 609, 175 S.E.2d at 347 (second- and third-degree burns on plaintiff's body were direct and natural results of the initial compensable injury because the first injury caused a weakened body condition, the "loss of feeling and sensitivity," rendering him unable to feel the burning); *see also* 1 *Larson's Workmen's Compensation Law* § 13.12(a) at 3-546 — 3-553 (the necessary causal connection is established when the compensable injury causes a weakened condition which results in subsequent injuries).

In this case, plaintiff's back was in a weakened condition as a result of the initial compensable injury, and the cesarean surgery was necessary solely because of plaintiff's weakened back. Therefore, the cesarean surgery was a direct and natural result of the compensable injury.

II

Intervening Cause

The Commission found as a fact that plaintiff's pregnancy was an intervening cause "attributable to [her] own intentional conduct." We disagree.

We are not bound by the findings of the Commission when they are not supported by competent evidence in the record. *Weaver v. Swedish Imports Maintenance, Inc.*, 319 N.C. 243, 246, 354 S.E.2d 477, 479 (1987). This finding of the Commission is not supported by the evidence. In fact, all the evidence supports a contrary finding. The record testimony is that plaintiff desired to prevent pregnancy, was advised by her doctor to use condoms, and that the pregnancy "resulted from the failure of the condom." In light of this evidence, we determine that plaintiff's voluntary act of intercourse was not an independent intervening cause attributable to claimant's 'own intentional conduct.' Our determination is consistent with this Court's holding in *Starr*. In *Starr*, plaintiff was paralyzed as a result of a compensable injury and was subsequently burned in a fire caused by plaintiff's arguably negligent act of smoking in bed. *Id.*, at 605, 175 S.E.2d at 346. This Court held that plaintiff's "smoking in bed was not such an independent intervening cause attributable to plaintiff's 'intentional conduct' as to defeat recovery." *Id.*, at 612, 175 S.E.2d at 347. In *Starr*, as here, plaintiff did not intend to cause the subsequent injury. To

to hold otherwise would limit the range of compensable damages for all working women of childbearing age in a manner inconsistent with established law.

In summary, the Commission's finding that plaintiff's "pregnancy was an independent intervening cause attributable to the plaintiff's own intentional conduct" is not supported by the evidence and is vacated. All of the evidence supports a contrary finding and this case is remanded with instructions that an order be entered by the Commission consistent with this opinion.

Vacated and remanded.

Judges EAGLES and PARKER concur.