***********
The Full Commission has reviewed the prior Order and prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman, the records contained in the Commission's file in this matter and the briefs before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence, the Full Commission reverses the Deputy Commissioner's denial of benefits and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The date of the alleged injury that is the subject of this claim is July 14, 1992.
2. On such date, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On such date, the employer-employee relationship existed between plaintiff and defendant.
4. On such date, defendant employed three or more employees.
5. Defendant is self-insured with Gallagher Bassett Service, Inc. as the servicing agent.
6. The Pre-Trial Agreement dated July 7, 2003, which was submitted by the parties, is incorporated herein by reference.
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following
 FINDINGS OF FACT
1. As determined in the first Opinion and Award filed in this case on December 30, 1993, plaintiff sustained compensable back injuries on July 14 and 16, 1992, while in the course of his employment with defendant. As of December 15, 1995, defendant had also admitted liability for plaintiff's cervical spine condition so that a hearing was no longer necessary on that issue.
2. Plaintiff was employed by defendant as a tire store manager on July 14, 1992, when he slipped on a wet concrete floor and fell onto his buttocks. He began experiencing pain in his low and mid back and had symptoms of right sciatica with numbness into his right foot. Plaintiff was initially treated with chiropractic treatments and, subsequently, referred to a neurosurgeon, Dr. Henry J. Eisner. A CT scan of plaintiff's lumbar spine performed on July 20, 1992, was negative, but revealed some degenerative changes involving the L4-5 facet joints. A prior study performed in 1991 showed a degenerated disc at L4-5 that Dr. Eisner opined was made worse by plaintiff's fall at work. Plaintiff was treated conservatively with facet joint injections and physical therapy.
3. Plaintiff was referred to Dr. Charles Branch on August 9, 1994, as he did not improve with conservative treatment and began having problems in his neck, shoulder, and arm. A cervical MRI performed on August 16, 1994, revealed a significant lesion at the C5-6 level. Thus, Dr. Branch performed an anterior cervical diskectomy and fusion on November 7, 1994. Pursuant to a deposition conducted on July 25, 1995, Dr. Branch opined that the fusion he performed was necessitated by the exacerbation of plaintiff's underlying degenerative condition brought on by plaintiff's July 1992 work injury. Defendant subsequently accepted the compensability of the cervical injury and paid for the surgery performed by Dr. Branch.
4. Plaintiff continued to experience pain in his neck, shoulder, and right arm and returned to Dr. Eisner in February 1996. At that time, Dr. Eisner felt plaintiff's situation was stable and plaintiff was treated conservatively with medication. A repeat cervical MRI performed on March 10, 1998, showed evidence of bilateral foraminal stenosis at the C5-6 level consistent with a nonunion. A post-myelogram CT scan was then recommended.
5. On June 3, 2002, plaintiff presented to Dr. Mark Roy with complaints of constant right arm pain and the development of similar symptoms on his left side. Dr. Roy noted possible nonunion at C5-6, diagnosed plaintiff with possible cervical myelopathy, and ordered a repeat MRI. A cervical MRI, performed on August 12, 2002, revealed a herniated disk at C4-5. On November 4, 2002, Dr. Roy thought plaintiff would benefit from a re-exploration of the C5-6 fusion and a diskectomy and fusion at the C4-5 level.
6. Plaintiff returned to Dr. Roy on August 26, 2002, complaining of worsening symptoms. The doctor recommended surgery to decompress and fuse the C4-5 interspace and to re-explore the fusion at C5. Defendant contested the causal relationship between the compensable injuries and the proposed surgery.
7. In February 2003, plaintiff decided to use his health insurance coverage to pay for the operation Dr. Roy recommended, and Dr. Roy performed the surgery on May 6, 2003. During surgery, the doctor determined that the fusion at the C5-6 interspace was in fact solid, so he did not operate further at that level. However, Dr. Roy did decompress and fuse the C4-5 interspace.
8. It was Dr. Roy's opinion that the conditions leading to C4-5 operation were not a direct result of the injuries plaintiff sustained in July 1992. The Full Commission finds there to be evidence that negates this opinion. At the earlier hearing of this case, Dr. Henry J. Eisner found, and the Full Commission finds as fact, that the 1992 fall worsened the degenerative condition of C4-5. This was based upon review of CT scans made prior to and after the 1992 fall. With respect to the C5-6 interspace which was injured in July 1992, Dr. Roy's findings during surgery did not reveal a non-union of the fusion, so that level was stable. However, the doctor was of the opinion, and the Full Commission finds as fact, that the fusion at C5-6 placed plaintiff at risk for more rapid degeneration of the next higher level at C4-5. Dr. Roy stated:
 "People that have an operation at one level are more likely to have degenerative disk disease at the — at the next contiguous level."
Dr. Roy further clarified:
 "In my experience, I would say that people — as I say, people with one level fused are at a greater risk for degenerative change at the next contiguous level." Finally, "the question is whether or not [degenerative disk disease] is accelerated by having had a fusion at at a different — at a contiguous level. And — and I don't think anybody says that the fusion . . . at one level causes at the next. It's that it accelerates something that's already going on."
 "I believe that, in part, the progression of the disease, of the cervical spine disease at C4-5 that necessitated his second operation, was related to his initial injury. And while not totally related to his initial injury, certainly in part it was. And so I think, in part, the compensation should come from — the workers' comp."
Dr. Roy did not think, and the Full Commission finds as fact, that this could not be apportioned rationally.
9. The problems at C4-5 that plaintiff developed in 2002 and the surgery he underwent in May 2003 more likely than not were a direct and natural result of the compensable injuries giving rise to this claim. Such treatment and surgery were necessary to effect a cure or relieve pain.
10. Defendant presented no medical evidence. Defendant's cross examination of Dr. Roy did not rebut the presumption created by plaintiff's prior proof of compensable injury to his back.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The problems at C4-5, with which plaintiff was diagnosed in 2002, were to the same part of the body (the spine) that was injured in July 1992. Since plaintiff proved injury to the spine in the earlier case, he is entitled to a presumption that later difficulties of the spine were a result of the compensable injury. Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997). Defendant did not rebut that presumption.
2. Plaintiff is entitled to have defendant pay for the medical expenses associated with treatment of his problems at C4-5. N.C. Gen. Stat. §§ 97-2(19); 97-25; Parsons v. Pantry, Inc., 126 N.C. App. 540, 485 S.E.2d 867
(1997); English v. J P Stevens Co., 98 N.C. App. 466 (1990); Heatherlyv. Montgomery Components, Inc., 71 N.C. App. 377, 380, 323 S.E.2d 29, 30
(1984) (quoting Petty v. Transport, Inc., 276 N.C. 417, 173 S.E.2d 321
(1970)), disc. review denied, 313 N.C. 329, 327 S.E.2d 890 (1985). The application of an intervening cause standard has been limited to consideration of those intervening events that are the result of a claimant's own intentional conduct.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay or reimburse those who paid for treatment and surgery to plaintiff's back, including the C4-5 interspace, at the rate for such services set forth in the Industrial Commission's medical fee schedule.
2. Defendant shall pay the costs.
This 21st day of June 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER