***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Gillen with modification regarding compensation for medical treatment.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over this matter. *Page 2 
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated and there is no question as to joinder or non-joinder of parties.
4. Plaintiff alleges to have sustained a compensable injury on February 14, 2006.
5. Plaintiff's average weekly wage was $404.43, which yields a compensation rate of $269.63.
6. Plaintiff contends that she has been out of work as the result of her alleged injury by accident from February 14, 2006 to the present.
7. The following were entered into evidence as stipulated exhibits:
 a. The Pre-Trial Agreement, marked as stipulated exhibit 1.
 b. The Industrial Commission Forms filed in this matter, collectively paginated 1-5 and marked as stipulated exhibit 2.
 c. Plaintiff's medical records collectively paginated 1-341 and marked as stipulated exhibit 3.
 d. Plaintiff's discovery responses collectively paginated 1-13 and marked as stipulated exhibit 4.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant-employer as an evening Customer Service Manager. At the time of the hearing before the Deputy Commissioner, plaintiff was 45 years *Page 3 
old.
2. Plaintiff testified that on February 14, 2006 she strained and injured her neck, shoulders, and lower back while pushing shopping carts from the parking lot into the store. This task was normally done by employees under her supervision rather than by her. Furthermore, there were an unusual number of carts to be collected that night because it was Valentine's night. Employees who normally would have been available to perform this task, or to assist plaintiff in this task, were unable to because they were busy throughout the store.
3. On the night of February 14, 2006 plaintiff noticed that virtually all of the shopping carts were in the parking lot and attempted to find workers to collect the carts and return them to the store. Finding none available, plaintiff undertook to complete this task by herself. There was an urgent need for the carts to be collected and returned in order to keep up with the entering customers' demand for them. The "mule," a mechanical device that assists employees in pushing the carts, was broken and inoperable on February 14, 2006. Unassisted, ten carts in a line is the most carts plaintiff can physically push at once, and plaintiff was forced by the circumstances to push that number on the night of February 14, 2006. To return carts to the store, carts were required to be navigated up a ramp and through the added resistance of a plastic curtain. Multiple trips were required to return all of the carts. Plaintiff testified that on February 14, 2006, as she was pushing carts, she heard her back snap and felt pain. Plaintiff thought the pain might resolve, so she kept working.
4. Plaintiff reported the injury to her supervisor and was examined at US Health Works on February 20, 2006. Her New Patient Worksheet completed on that date documents that plaintiff complained that her neck, shoulder, and lower back were in pain. This medical note also states that plaintiff's problems began when she was pushing shopping carts at Wal-Mart on *Page 4 
February 14, 2006 from 10 p.m. to 1:30 a.m. Plaintiff was prescribed physical therapy and on March 10, 2006 was referred to Dr. Jeffrey C. Beane, an orthopedist.
5. Plaintiff was first evaluated by Dr. Beane on April 6, 2006. The medical note from that date documents that he diagnosed plaintiff with S1 radiculopathy secondary to disc herniation at L5-S1, lateral recessed stenosis at L5-S1, lumbar spondylosis 4-5 and 5-1, and resolving cervical and lumbar strains. The note also removes plaintiff from work and indicates that this is related to her work injury. Dr. Beane testified by deposition that at the initial visit plaintiff reported that her injury occurred at work when she was pushing some carts.
6. Because of her injury and resultant condition plaintiff was assigned light-duty, part-time work and attempted to work sporadically following the February 14, 2006 incident. With a Form 60, Employer's Admission of Employee's Right to Compensation Pursuant to N.C. Gen. Stat. § 97-18(b), dated March 17, 2006 defendants began paying plaintiff temporary partial disability benefits.
7. Plaintiff continued to treat with Dr. Beane for her lower back pain. Plaintiff underwent two MRIs of the lumbar back and a nerve conduction study which revealed L5-S1 radiculopathy.
8. Without seeking authorization from defendants, plaintiff sought treatment from her family physician, Dr. Sherry Ryter-Brown in October 2006 for bilateral hand numbness and bilateral shoulder pain. Dr. Ryter-Brown referred plaintiff to Dr. William O. Bell at Neurosurgical Associates of the Carolinas.
9. On November 6, 2006 plaintiff attended an appointment with Dr. Bell and complained of low back pain, leg pain, neck pain, and arm pain. Dr. Bell prescribed conservative treatment but designated plaintiff as a candidate for a two level fusion from C5 to *Page 5 
C7. Plaintiff did not notify defendant-carrier of her treatment with Dr. Bell and did not request authorization to continue treating with Dr. Bell.
10. Plaintiff returned to Dr. Beane on November 14, 2006. At that time he noted that plaintiff reported neck and intermittent pain in both shoulders, which is worse that her lower back and leg pain.
11. Dr. Beane could not opine with any degree of certainty that plaintiff's continuing neck problems were related to the February 14, 2006 injury by accident.
12. On December 22, 2006 plaintiff underwent an anterior cervical discectomy fusion surgery at C5-6 and C6-7, performed by Dr. Bell. Dr. Bell has opined that plaintiff's February 14, 2006 workplace accident was causally related to her cervical problems.
13. Greater weight is given to the opinions of Dr. Bell, who treated plaintiff for her neck condition, than to Dr. Beane.
14. The physical therapy prescribed subsequent to the December 22, 2006 surgery exacerbated plaintiff's symptoms in her neck and both shoulders.
15. Plaintiff's shoulder pain persisted. As a result, Dr. Bell referred plaintiff to Dr. Gregory G. Holthusen at Orthopaedic Specialists of the Carolinas. Dr. Holthusen eventually referred her to shoulder specialist Dr. Michael D. Lauffenburger on August 28, 2007 to determine whether decompressive surgery was necessary.
16. Dr. Lauffenburger determined to proceed with arthroscopic decompression and on October 4, 2007 he performed a left shoulder arthroscopic decompression procedure on plaintiff.
17. Dr. Holthusen testified that plaintiff's left shoulder injury was a type that can be caused by an injury such as the one described by plaintiff as occurring on February 14, 2006. Dr. Lauffenburger also testified that plaintiff's left shoulder condition was likely caused by the *Page 6 
February 14, 2006 accident.
18. Regarding plaintiff's right shoulder bursitis and/or impingement problems, Dr. Lauffenburger has concluded that plaintiff's right arm is experiencing overuse type symptoms of bursitis which originally stem back to the left shoulder injury. A medical note from Dr. Lauffenburger dated March 12, 2008 foresees the necessity of right shoulder surgery to alleviate plaintiff's condition.
19. Plaintiff did not seek authorization from defendant-carrier for her treatment with Dr. Holthusen or Dr. Lauffenburger.
20. Plaintiff has been written out of work by various doctors continuously since her fusion surgery of December 23, 2006.
21. Plaintiff's work duties and the conditions experienced during her shift on Valentine's night 2006 constituted an interruption of plaintiff's normal work routine and the introduction thereby of conditions likely to result in unexpected consequences. Specifically, plaintiff's work was unusual on the night of the injury because retrieving and pushing shopping carts was not normally a task plaintiff performed, plaintiff normally would have help if she did perform this duty, the mule was broken and inoperable that night, there were more shopping carts in the parking lot than normal in that the store was unusually busy due to the date, and that night plaintiff was required to push an unusually large number carts at a time. Plaintiff's unusual work duties and consequent extra and unusual amount of exertion of February 14, 2006 thereby resulted in plaintiff's injury.
22. On or about February 14, 2006 plaintiff sustained a compensable injury by accident to her neck, left shoulder, and back arising out of and in the course of her employment with defendant-employer. *Page 7 
23. Plaintiff's right shoulder condition was directly related to, and was a natural and unavoidable consequence of, the compensable February 14, 2006 injury.
24. The credible medical and vocational evidence of record shows that, as a result of her February 14 2006 injury, plaintiff has been totally disabled and therefore unable to earn any wages in any employment from December 23, 2006 and continuing.
25. Plaintiff failed to seek authorization from defendants for her treatment with Drs. Bell, Holthusen, and Lauffenburger. Plaintiff did not request approval of the Industrial Commission of any medical treatment she sought without authorization from defendants until February 12, 2007, after she had undergone cervical fusion surgery with Dr. Bell. Plaintiff's request to the Commission for approval of the unauthorized medical treatment she received was not made in a timely manner.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. It is settled law in North Carolina that the "injury by accident" requirement of N.C. Gen. Stat. § 97-2(6) can be satisfied when a plaintiff is injured due to an extra or unusual degree of exertion, in that this can constitute an unforeseen or unusual event or condition.Jackson v. Fayetteville Area Sys. of Transpt., 88 N.C. App. 123,362 S.E.2d 569 (1987). Furthermore, our courts have held that an injury is compensable if it is caused by an accident that arises out of employment, materially accelerates or aggravates a pre-existing condition, and proximately contributes to disability. N.C. Gen. Stat. §97-2; Brown v. Family Dollar Distrib. Ctr. 129 N.C. App. 361,499 S.E.2d 197 (1998). *Page 8 
2. On February 14, 2006, during her work with defendant-employer, plaintiff suffered a compensable injury by accident to her neck, left shoulder, and lower back arising out of and in the course of her employment with defendant-employer. Plaintiff's work duties and the conditions experienced during her shift on Valentine's night 2006 constituted an interruption of plaintiff's normal work routine and the introduction thereby of conditions likely to result in unexpected consequences. Specifically, plaintiff's work was unusual on the night of the injury because retrieving and pushing shopping carts was not normally a task plaintiff performed, normally she would have help if she did perform this duty, the mule was broken and inoperable that night, there were more shopping carts in the parking lot than normal in that the store was unusually busy due to the date, and that night plaintiff was required to push an unusually large number carts at a time. Plaintiff's unusual work duties and consequent extra and unusual amount of exertion of February 14, 2006 thereby resulted in plaintiff's injury. N.C. Gen. Stat. § 97-2(6); Ferreyra v. Cumberland County, 175 N.C. App. 581
(2006); Jackson v. Fayetteville Area Sys. of Transpt., 88 N.C. App. 123,362 S.E.2d 569 (1987). This compensable injury by accident caused plaintiff's conditions or materially accelerated or aggravated pre-existing non-disabling conditions. N.C. Gen. Stat. § 97-2(6); Brownv. Family Dollar Distrib. Ctr. 129 N.C. App. 361 (1998).
3. Given the credible medical evidence and as a result of her compensable injury of February 14, 2006, plaintiff was temporarily totally disabled and is entitled to temporary total disability compensation at the rate of $269.63 per week for the period from December 12, 2006 and continuing until plaintiff returns to work or further order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowes Prod.Distribution, 108 N.C. App. 762. 425 S.E.2d 454 (1993). *Page 9 
4. An injured employee has the right to procure her own physician so long as the Industrial Commission approves such treatment. N.C. Gen. Stat. § 97-25. A request for the Commission's approval must be made within a reasonable time after the employee seeks the treatment.Schofield v. Great Atl. Pac. Tea Co., 299 N.C. 582, 263 S.E.2d 56
(1980). In the case at hand, plaintiff did not make a request for approval of her medical treatment within a reasonable amount of time. Thus, plaintiff's unauthorized treatment with Drs. Bell, Holthusen, and Lauffenburger is not approved.
5. Our courts have held that "when the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct." English v. J.P. Stevens Co., 98 N.C. App. 466,391 S.E.2d 499 (1990); Roper v. J.P. Stevens Co., 65 N.C. App. 69,308 S.E.2d 485 (1983), disc. review denied, 310 N.C. 309, 312 S.E.2d 352
(1984). In this case, plaintiff's right shoulder condition is a natural consequence that flows from her compensable February 14, 2006 injury.
6. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendants provide all medical treatment, incurred or to be incurred, necessitated by plaintiff's neck, left shoulder, right shoulder and back injuries except for the treatment provided by Drs. Bell, Holthusen, and Lauffenburger. Defendants have the right to direct plaintiff's medical care regarding her neck, left shoulder, right shoulder, and back injuries. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following: *Page 10 
 AWARD
1. Given the credible medical and vocational evidence of record, and her compensable injury of February 14, 2006, defendants shall pay plaintiff, subject to the attorney's fee approved below, temporary total disability compensation at a rate of $269.63 per week for the period from December 23, 2006 and continuing until plaintiff returns to work or further order of the Commission. Those payments that have accrued shall be paid in a lump sum, subject to the attorney's fee approved below.
2. Defendants shall pay all medical expenses incurred or to be incurred as a result of the February 14, 2006 compensable injury to plaintiff's plaintiff's neck, left shoulder, right shoulder and back injuries except for the treatment provided by Drs. Bell, Holthusen, and Lauffenburger
3. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent of any lump sum due plaintiff shall be deducted and paid directly to plaintiff's counsel. Thereafter, plaintiff's attorney shall receive every fourth compensation check due plaintiff.
4. Defendants shall pay the costs.
This the 20th day of February, 2009.
S/___________________ DIANNE C. SELLERS COMMISSIONER
 CONCURRING: *Page 11 
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1