***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments before the Full Commission. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, defendant-employer regularly employed three (3) or more employees in the State of North Carolina.
3. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter.
4. Employee Curry Shaw (hereafter "decedent") sustained a compensable injury by accident on July 12, 2000 while working for defendant-employer. Decedent's death occurred on September 25, 2008.
5. American Protection Insurance Company is the carrier on the risk in this claim, with Sedgwick Claims Management administering for defendant-carrier.
6. Decedent's average weekly wage was $825.55. Defendants paid decedent total disability compensation at the rate of $550.36 per week from August 5, 2002 until his death on September 25, 2008.
7. For purposes of N.C. Gen. Stat. § 97-38 and at all relevant times in this workers' compensation case, Linda Shaw has been "disabled."
8. The issues before the Commission are whether the decedent's death arose out of and in the course of his employment with defendant-employer and, if so, to what benefits is plaintiff, his surviving spouse, entitled; whether plaintiff is entitled to attorney's fees for defendants' defense of this hearing without reasonable grounds; and whether the claim for death benefits is barred by the statute of limitations of N.C. Gen. Stat. § 97-38.
 *********** EXHIBITS *Page 3 
1. The following documents were admitted into evidence as exhibits:
 • Stipulated Exhibit 1: Pre-Trial Agreement
 • Stipulated Exhibit 2: Indexed set of paginated stipulated exhibits
2. Plaintiff's Motion to Submit New Evidence to the Full Commission is HEREBY GRANTED and the two divorce judgments from plaintiff's marriages prior to her marriage to decedent are admitted into evidence over defendants' objection.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of his death, decedent was 45 years old. Decedent was survived by his wife, Linda Shaw (hereinafter "plaintiff") who was his sole dependent. Plaintiff and decedent were married on August 2, 2004, and never separated, divorced, or lived apart from each other during their marriage.
2. This case has been the subject of prior litigation resulting in the Supreme Court of North Carolina's decision in Shaw v. USAirways, Inc., 362 N.C. 457, 665 S.E.2d 49 (2008). This prior litigation did not deal with decedent's disability, but dealt with decedent's authorized treating physician, Dr. Douglas Pritchard, and the issue of average weekly wage. The prior litigation did not produce a final determination of decedent's disability.
3. Decedent had several injuries while working as a baggage handler for defendant-employer over numerous years, including his admittedly compensable injury to his back on July 12, 2000. Defendants accepted liability for decedent's injury by filing a Form 60 Employer's Admission of Employee's Right to Compensation and by filing subsequent Forms 62 Notice of *Page 4 Reinstatement or Modification of Compensation that indicate the compensation decedent received through September 24, 2008 was for temporary total disability.
4. As a result of this injury, decedent underwent a microdiskectomy on December 12, 2002, and a lumbar fusion with pedicle screw implantation on October 7, 2003. Defendants authorized and paid for these surgeries.
5. Decedent was then diagnosed with failed back surgery syndrome and continued to have pain related to his compensable back injury. In February 2004, decedent's authorized treating neurosurgeon referred him to Dr. Douglas Pritchard for regular pain management.
6. The prior Opinion and Award by the Full Commission filed on October 3, 2005, designated Dr. Pritchard as decedent's authorized treating physician. Defendants paid for all medical treatment and recommendations made by Dr. Pritchard for decedent's back pain. On May 14, 2004, Dr. Pritchard began prescribing methadone to address decedent's back pain. Methadone is a narcotic used for pain relief, and decedent's back pain was the only medical reason for which he took methadone. The dosage started out at four 10mg tablets per day, or 120 tablets per month. Less than two weeks later, on May 27, 2004, Dr. Pritchard increased the dosage to eight 10mg tablets per day, or 240 tablets per month. On March 22, 2005, Dr. Pritchard increased the dosage to sixteen 10mg tablets per day, or 480 tablets per month. Dr. Pritchard also prescribed quick release morphine for decedent's breakthrough pain.
7. Defendants authorized and paid for decedent's methadone prescription. Occasionally, however, defendants did not authorize decedent's medication refills in a timely fashion, forcing decedent to pay for his medication himself and later get reimbursement from defendants. Because he felt that he could not go without his medications, decedent was fearful that he would be without methadone due to defendants' failure to timely authorize the refills. *Page 5 
Whenever decedent had leftover methadone pills, he saved them to guard against this contingency.
8. On September 25, 2008, decedent became nonresponsive to plaintiff. Decedent was taken by ambulance to the emergency room at Lake Norman Hospital, where his medical records indicated he was on methadone and morphine for chronic back pain and a work-related injury. Decedent was then airlifted to Wake Forest Baptist Medical Center in Winston-Salem. Decedent died at approximately 2:43 p.m. on September 25, 2008. Decedent's body was delivered to the custody of the North Carolina Medical Examiner's Office for autopsy. At the time, the cause and manner of death on decedent's death certificate were listed as "pending" investigation by the North Carolina Medical Examiner's Office.
9. By authority of the North Carolina General Statutes, the North Carolina Medical Examiner's Office has exclusive jurisdiction to determine cause and manner of death in this state. "Manner of death" deals with categorizing the demise as homicide, suicide, accident, natural, or undetermined, and categorizing a death in one of these categories rules out its placement within the remaining categories. "Cause of death" deals with the mechanism of death.
10. An autopsy of decedent was performed on September 26, 2008. Toxicological measurements taken during autopsy were negative for the quick-release morphine and other opiates, but positive for methadone. From decedent's aortic artery, the methadone measurement was 3.3 mg/L. From decedent's liver tissue, the methadone measurement was 8.0 mg/kg. From decedent's femoral artery, the methadone measurement was 1.9 mg/L.
11. All of these laboratory measurements upon autopsy confirmed that decedent died *Page 6 
as the result of methadone toxicity. All of the forensic pathologists and medical examiners testifying in this case agreed that these levels of methadone were toxic and that decedent's cause of death was methadone toxicity.
12. Based on the toxic levels of methadone in decedent's system, Dr. Maryanne Gaffney-Kraft of the North Carolina Medical Examiner's Office amended decedent's death certificate in April 2009 to reflect that the cause of his death was acute methadone toxicity and that the manner of his death was accidental. Dr. Kraft is associate chief medical examiner and an expert in the field of forensic pathology and medical examination. Dr. Kraft testified that individuals taking methadone develop a tolerance to the extent that the therapeutic level changes somewhat based on the dose and how long the individual has been on methadone. She stated her expert opinion that the methadone levels found in decedent's body were consistent with a therapeutic dose for a man who had been taking methadone at the levels he was for four years. Dr. Kraft believed and the Full Commission finds that because plaintiff was prescribed methadone to treat his back pain, then the back pain was an indirect cause of death.
13. All of the forensic pathologists, medical examiners, and other medical experts were unanimous in their opinions that decedent's death was accidental and did not result from intentional conduct of decedent.
14. Based upon the greater weight of evidence, including the uncontroverted medical evidence, the Full Commission finds that the cause of decedent's death was methadone toxicity and that the manner of death was accidental.
15. Dr. Joshua Perper is the medical examiner for Broward County, Florida, and is an expert forensic pathologist and medical examiner retained by defendants. Although Dr. Perper agreed that the cause of decedent's death was methadone toxicity, his opinion is that the *Page 7 
methadone toxicity was due to decedent's methadone overdose and that such an overdose was not a direct or immediate result of decedent's work-related low back injury or treatment for the injury.
16. Dr. Perper's assumption that decedent significantly deviated from the prescribed amounts of methadone by calibrating his own dosages is given little weight. The greater weight of the evidence shows that decedent more likely than not took his methadone in substantial compliance with Dr. Pritchard's prescription.
17. The greater weight of the medical evidence further shows that decedent's insidious development of fatty liver disease gradually impaired his liver's metabolic efficiency so that his regular ingestion of methadone caused his death by methadone toxicity, even though he was taking therapeutic levels of methadone as prescribed. The severe fatty liver disease was a contributing factor in decedent's death because, as the disease worsened, it decreased decedent's metabolism of and tolerance to methadone, since his liver could no longer efficiently detoxify the methadone. To the extent that decedent varied from the prescribed amounts of methadone, the greater weight of the evidence shows that any such deviation was due to increased or diminished pain suffered by decedent on a particular day.
18. Based upon the greater weight of the evidence of record, the Full Commission finds that decedent died of methadone toxicity that was causally related to his compensable back injury.
19. Defendants did not defend this claim without reasonable grounds.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following: *Page 8 
 CONCLUSIONS OF LAW
1. Decedent sustained an admittedly compensable injury to his back on July 12, 2000 arising out of and in the course of decedent's employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Decedent suffered from back pain as a direct and natural result from his compensable injury. Decedent used methadone, prescribed by his authorized treating physician, for his back pain due to his compensable injury for over four and one-half years prior to his death. Decedent's death was caused by methadone toxicity and was a direct result of his use of methadone. Decedent's death was a proximate result of his original compensable back injury on July 12, 2000. Starr v. Paper Co.,8 N.C. App. 604, 175 S.E.2d 342 (1970).
3. When the primary injury is shown to have arisen out of an injury by accident, "every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct." Starr v. Paper Co.,8 N.C. App. 604, 611, 175 S.E.2d 342, 347 (1970). Thus, a subsequent injury is compensable if it is the direct and natural result of the compensable primary injury. Id. "While there must be some causal connection between the employment and the injury, it is not necessary that the original injury be the sole cause of the second injury." Vandiford v. Stewart Equipment Co.,98 N.C. App. 458, 462, 391 S.E.2d 193, 195 (1990). Defendants failed to show an independent intervening event broke the chain of proximate causation between decedent's original compensable back injury which resulted in development of back pain and the use of methadone leading to decedent's death from methadone toxicity.English v. J. P. Stevens Co.,98 N.C. App. 466, 391 S.E.2d 499 (1990); Heatherly v. *Page 9 Montgomery Components, Inc.,71 N.C. App. 377, 323 S.E.2d 29 (1984), disc. rev. denied,313 N.C. 329, 327 S.E.2d 890 (1985); Starr v. Paper Co.,supra.
4. Pursuant to N.C. Gen. Stat. § 97-38, "If death results proximately from a compensable injury or occupational disease and within six years thereafter, or within two years of the final determination of disability, whichever is later . . . the employer shall pay or cause to be paid [death benefits]. . . ." N.C. Gen. Stat. § 97-38.
5. Decedent was paid temporary total disability pursuant to a Form 60 and subsequent Forms 62 until his death. At the time of decedent's death no "final determination of disability" had been made within the meaning of N.C. Gen. Stat. § 97-38. Decedent's time limitation had not began to toll on the date of his death. Therefore, plaintiff's claim for death benefits is not barred by N.C. Gen. Stat. § 97-38.
6. Plaintiff was wholly dependent upon decedent at the time of his death and she is therefore entitled to death benefits. N.C. Gen. Stat. §§ 97-38, 97-39. Decedent did not leave any other persons who were either wholly or partially dependent upon decedent for support. Plaintiff, widow of decedent, is the only person entitled to take the death benefits in this matter.
7. Due to plaintiff's disability as stipulated by the parties, she is entitled to be paid death benefits at the rate of $550.36 per week beginning on September 25, 2008 and continuing over the remainder of her life or until remarriage. N.C. Gen. Stat. § 97-38.
8. Plaintiff is entitled to reimbursement for any funeral expenses incurred on behalf of decedent, not to exceed $3,500.00, pursuant to the provisions N.C. Gen. Stat. § 97-38.
9. Defendants did not defend this matter in an unreasonable manner or without reasonable grounds and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. *Page 10 Sparks v. Mountain Breeze Restaurant,55 N.C. App. 663, 286 S.E.2d 575 (1982).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay death benefits of $550.36 per week to plaintiff Linda Shaw, widow of the decedent, beginning on September 25, 2008, and continuing for the remainder of her life or until remarriage.
2. Defendants shall reimburse plaintiff for any funeral expenses incurred on behalf of decedent not to exceed $3,500.00, pursuant to the provisions N.C. Gen. Stat. § 97-38.
3. A reasonable attorney's fee in the amount of 25% is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel in one lump sum of the accrued amount due and thereafter by paying counsel every fourth compensation check due plaintiff.
4. Defendants shall pay the costs.
This 10th day of December, 2010.
 S/__________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING: *Page 11 
 S/__________________ PAMELA T. YOUNG CHAIR
 S/__________________ BERNADINE S. BALLANCE COMMISSIONER