***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further *Page 2 
evidence, or rehear the parties or their representatives. Accordingly, the Full Commission affirms with modifications, the Opinion and Award of Deputy Commissioner Harris.
 *********** ISSUES
1. Whether Plaintiff's right knee condition is compensable in this claim?
2. If so, to what compensation is Plaintiff entitled?
3. Whether Plaintiff should be compelled to execute an Industrial Commission Form 26A, Employer's Admission of Employee's Right toPermanent Partial Disability, for his compensable left knee injury?
 ***********
The Full Commission finds as fact and concludes as matters of law the following stipulations of the parties:
 STIPULATIONS
1. The parties are subject to the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between Defendant-Employer and Plaintiff on October 30, 2008, the date of injury in this claim.
3. The carrier on the risk in this claim is the Insurance Company of the State of Pennsylvania, with Claims Management, Inc. acting as the third-party administrator.
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Industrial Commission Forms *Page 3 
 • Exhibit 2: Plaintiff's medical records
 • Exhibit 3: Personnel file
Following the hearing before the Deputy Commissioner, the parties submitted proposed written questions for Dr. Humble and Dr. DuPuy to the Deputy Commissioner. The Deputy Commissioner took the proposed questions under advisement and drafted letters to Dr. Humble and Dr. DuPuy soliciting their expert opinions in this matter. Deputy Commissioner Harris received responses from both physicians and took those responses into consideration.
 *********** EVIDENTIARY AND OTHER RULINGS
At the hearing before the Deputy Commissioner, Defendants moved for post-hearing depositions of Dr. Humble and Dr. DuPuy. As Plaintiff was pro se at the time, Deputy Commissioner Harris denied the motion.
After the Deputy Commissioner re-opened the record for the limited purpose of allowing Plaintiff's newly-retained counsel to submit contentions, Plaintiff's counsel submitted contentions that included an argument, in Section III of said contentions, for the award of indemnity compensation related to Plaintiff's compensable left knee condition. Said argument contained references to events that allegedly occurred after the November 18, 2009 hearing before the Deputy Commissioner, including a pending left total knee replacement that Defendants had agreed to authorize after a second opinion pursuant to N.C. Gen. Stat. § 97-25.3. The contentions submitted by Plaintiff's counsel also attached medical records from 2010 from Dr. Humble and Dr. DuPuy.
Plaintiff made a Motion for Permission to Amend the Record. Defendants filed a response and made a Motion to Strike Portions of Plaintiff's Contentions, Proposed Opinion and *Page 4 
Award, and Exhibits, seeking to have stricken the 2010 medical records themselves, any references to them, and Section III of Plaintiff's contentions. Defendants' Motion to Strike was granted by Deputy Harris, and the Full Commission affirms this evidentiary ruling. The 2010 medical records and arguments related to them are not considered in deciding this case. Plaintiff's contention that he is entitled to indemnity compensation related to his compensable left knee condition will not be decided, as such issue was not before the Deputy Commissioner as of the November 18, 2009 hearing and relates to events that allegedly occurred after the closing of the record.
However, it is noted that as of the submission of contentions by Plaintiff's counsel, Defendants had agreed to authorize a left total knee replacement for Plaintiff. In their response and Motion to Strike, Defendants did not contest that they had authorized the left total knee replacement.
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 46 years old, with a date of birth of July 13, 1964.
2. In October 2007, Plaintiff underwent a right knee arthroscopy and partial medial meniscectomy with Dr. Harrison A. Latimer at Salisbury Orthopaedic Associates. Following that surgery, Plaintiff's right knee was sore for several months.
3. On January 2, 2008, Plaintiff saw Dr. Robert S. Humble, also with Salisbury Orthopaedic Associates, for follow-up on his right knee condition. Dr. Humble ordered physical therapy. Plaintiff did not appear for three different follow-up appointments with Dr. Humble in *Page 5 
January and February 2008. Dr. Humble approved Plaintiff's returning for treatment only as needed as of March 11, 2008.
4. In the months prior to the October 30, 2008 incident that is the subject of this claim, Plaintiff's right knee was fully functional. Plaintiff did not receive medical treatment for his right knee from January 2, 2008 through October 30, 2008.
5. On October 30, 2008, Plaintiff was working as a co-manager at Defendant-Employer's store #5320 in Greensboro, North Carolina. Plaintiff was asked to escort an alleged shoplifter to the loss-prevention area of the store. Plaintiff was holding the woman by her right arm and walking with her when she jerked aggressively to the left. At that moment, Plaintiff felt a pop and immediate sharp pain in his left knee. His left knee buckled inward, and he went down to the floor.
6. Immediately after the shoplifter incident, Plaintiff felt slight pain in his right knee. The pain in his right knee got progressively worse after that. However, his left knee symptoms were worse than the right knee immediately following the incident, and the left knee was thus the focus of the initial treatment.
7. Following the incident, Plaintiff was taken to the emergency room at Wesley Long Hospital in Greensboro, North Carolina. The records of that visit do not indicate that Plaintiff complained of right knee symptoms while there.
8. Plaintiff completed an Industrial Commission Form 19, Employer's Report of Injury to the NCIC, in this matter, on October 30, 2008. He listed the injuries and specific body parts involved as "Torn Ligmnt/Cart/Muscle KNEE(S)".
9. Defendants accepted a left knee injury as compensable by filing an Industrial Commission Form 60, and Defendants provided Plaintiff with medical treatment for his left knee *Page 6 
condition. Defendants also paid Plaintiff salary continuation for all periods he was out of work for his left and/or right knee condition(s) prior to the hearing before the Deputy Commissioner.
10. On November 3, 2008, Plaintiff saw Dr. Humble for treatment of his left knee injury. On November 19, 2008, Dr. Humble performed arthroscopic surgery on Plaintiff's left knee to repair ACL and meniscus tears.
11. Following the November 19, 2008 surgery, Plaintiff continued to follow up with Dr. Humble. Dr. Humble did not feel that Plaintiff was able to complete adequate physical therapy with regard to his compensable left knee condition due to his work schedule.
12. On or about December 1, 2008, Plaintiff returned to work with Defendant-Employer.
13. On February 13, 2009, Dr. Humble noted that Plaintiff complained of pain in his right knee, and Dr. Humble ordered an MRI.
14. On February 26, 2009, Plaintiff had the right knee MRI. In comparison with an MRI that had been taken of Plaintiff's right knee on October 4, 2007, the 2009 MRI showed "interval development of extensive tearing of the posterior horn and body of the medial meniscus" and a "new, large, medial femoral condylar area of marrow edema with a small possible area of early osteonecrosis."
15. On May 20, 2009, Dr. Humble performed arthroscopic surgery on Plaintiff's right knee. Dr. Humble noted that the right knee showed traumatic damage "from when he had the fall." Dr. Humble further noted that the surgery revealed a right osteochondral defect in the anterior part of the medial femoral condyle but no significant degenerative changes in the knee. Dr. Humble further noted some wearing of the patellofemoral groove, but that this was isolated *Page 7 
with an isolated meniscal tear in that region. Dr. Humble concluded, these conditions are associated with Plaintiff's original fall.
16. On June 4, 2009, Dr. Humble dictated a letter in which he noted that he believed that Plaintiff's right knee condition was a work-related injury. Dr. Humble stated that, while Plaintiff had previously undergone a right knee meniscectomy with Dr. Latimer, Plaintiff had been doing well with his right knee until "his recent accident." Dr. Humble further noted that Plaintiff's right knee had given him problems after the accident but not as badly as his left knee.
17. On June 17, 2009, Dr. Humble dictated another letter, stating:
 The last note I sent to you dated June 4, 2009 was in reference to his right knee. When I re-evaluated the chart, I originally thought his right knee was a work injury but it was not. Dr. Latimer just told where he worked but he did not injure his right knee at that time. He ended up having surgery on it for a meniscectomy which was on his private insurance. He subsequently was doing well and had no problems until he had his most recent injury. After having the ACL, the symptoms on his right knee became worse. Therefore I think it is a direct association with the injury he had sustained as well as aggravation from the ACL surgery. He does have retearing of the posterior horn of the medial meniscus. Therefore I think this should be covered under WC.
17. Defendants denied compensability of Plaintiff's right knee condition by filing an Industrial Commission Form 61 dated June 17, 2009.
18. Plaintiff performed physical therapy for his right knee condition while he was out of work following the May 20, 2009 surgery and made good progress. On July 6, 2009, Dr. Humble cleared Plaintiff to return to work at limited duty.
19. On August 12, 2009, Dr. Humble assigned a permanent partial impairment (PPI) rating of 20 percent (20%) for Plaintiff's left leg.
20. On November 4, 2009, Plaintiff presented to Dr. DuPuy, an orthopedic surgeon, for a one-time evaluation ordered by Defendants, to determine whether Plaintiff's right knee *Page 8 
condition was causally related to the October 30, 2008 shoplifter incident. Dr. DuPuy noted in his history that Plaintiff did not recall having had any right knee pain at the time of the incident. Concerning the right knee, Dr. DuPuy noted, "Whereas I agree with Dr. Humble's treatment of the right knee . . . I see no evidence that the right knee condition of torn meniscus was either caused or aggravated by the injury."
21. In his testimony at hearing before the Deputy Commissioner, Plaintiff did not recall having told Dr. DuPuy that he did not recall having had any right knee pain at the time of the incident.
22. Dr. DuPuy agreed with the 20 percent (20%) PPI rating for Plaintiff's left leg assigned by Dr. Humble.
23. In his response to the Deputy Commissioner's letter, Dr. Humble opined that the October 30, 2008 left knee injury and the treatment and recovery therefrom more likely than not caused and/or significantly contributed to Plaintiff's right knee condition for which Dr. Humble performed surgery on May 20, 2009. Dr. Humble wrote, "I believe there was probably an associated injury with that fall and if not, it would have aggravated the other leg simply by the fact of his putting so much stress on it during the early course of nonweightbearing, limping on it and the fact that he seemed to be more inclined to be at work than to go to therapy and rehab either of his legs."
24. Dr. Humble recalled Plaintiff complaining of his right knee hurting before the first mention of such pain in Dr. Humble's notes on February 13, 2009. Dr. Humble explained that the left knee injury was far more severe, and he thus did not feel that it was pertinent to document Plaintiff's complaints of right knee pain. *Page 9 
25. Dr. Humble confirmed that there is a substantial risk of the necessity for future medical treatment for Plaintiff's right knee condition, noting that Plaintiff will probably need more treatment related to the osteochondral defect, such as medications, injections, and possible further surgery.
26. In his response to the Deputy Commissioner's letter, Dr. DuPuy opined that the October 30, 2008 incident itself did not cause or significantly contribute to Plaintiff's right knee condition or materially aggravate a pre-existing condition. He noted that, based on his record of the history he maintained Plaintiff provided him, there was no effect on Plaintiff's right knee in the mechanism of the October 30, 2008 injury.
27. Dr. DuPuy further opined that the October 30, 2008 left knee injury did not cause or significantly contribute to Plaintiff's right knee condition for which Dr. Humble performed surgery.
28. Dr. DuPuy noted that he reviewed the film from Plaintiff's February 26, 2009 right knee MRI and that, while the changes seen in that film could have been from direct trauma or a degenerative process, he concluded, based on a lack of evidence of microfracture and/or loose cartilage pieces and/or tendon and ligament involvement, that the MRI showed only degenerative changes. He did indicate that the MRI showed degenerative tearing of the posterior meniscus and edema around the medial collateral ligament, both of which could have been from trauma.
29. The Full Commission accords more weight to the opinions of Dr. Humble than to those of Dr. DuPuy. Dr. Humble was Plaintiff's treating physician and saw him many times over the course of many months, while Dr. DuPuy saw Plaintiff once, over a year after the October 30, 2008 incident. Also, while Dr. DuPuy reviewed the film from the February 26, 2009 right *Page 10 
knee MRI, Dr. Humble actually viewed the interior of Plaintiff's right knee in an arthroscopic surgery.
30. Also, Dr. DuPuy placed great weight on Plaintiff's lack of complaints of right knee pain soon after the October 30, 2008 incident. However, the Full Commission finds Plaintiff to have been credible in his testimony that his right knee was fully functional before the incident and that he had pain in his right knee upon the occurrence of the incident.
31. The Full Commission takes notice that Defendants have authorized Plaintiff to undergo a left total knee replacement. Therefore, Plaintiff is not at maximum medical improvement for his compensable left knee condition as of the dates that Dr. Humble and Dr. DuPuy assigned their PPI ratings.
32. The treatment provided by Dr. Humble for Plaintiff's right knee condition has been reasonably required to effect a cure, provide relief, and/or lessen the period of Plaintiff's disability related to said condition.
33. More treatment for Plaintiff's left and right knee conditions is reasonably required to effect a cure, provide relief and/or lessen the period of Plaintiff's disability related to said conditions.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On October 30, 2008, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with Defendant-Employer. N.C. Gen. Stat. § 97-2(6). *Page 11 
2. In cases involving complicated medical questions, only an expert can give competent opinion testimony as to the issue of causation.Click v. Pilot Freight Carriers,300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). The causal relationship must be established by evidence "such as to take the case out of the realm of conjecture and remote possibility."Holley, 357 N.C. at 232, 581 S.E.2d at 753. The greater weight of the evidence shows that Plaintiff's left and right knee conditions are related to the October 30, 2008 incident.Id.
3. "When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct." English v. J.P. Stevens Co.,98 N.C. App. 466, 391 S.E.2d 499 (1990); Roper v. J.P.Stevens Co., 65 N.C. App. 69, 308 S.E.2d 485 (1983), disc.review denied, 310 N.C. 309, 312 S.E.2d 352 (1984). In this case, Plaintiff's right knee condition is a direct and natural result of his compensable October 30, 2008 incident and left knee condition and is thus itself compensable. Starr v. Charlotte Paper Co.,8 N.C. App. 604, 175 S.E. 2d 342 (1970).
4. Plaintiff is entitled to have Defendants pay for the treatment he has received and for future medical treatment for his compensable right knee condition with or at the direction of Dr. Humble, including but not limited to diagnostic testing and imaging, surgery, physical therapy, prescriptions, injections, and mileage. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
5. There is a substantial risk of the necessity of future medical treatment for Plaintiff's compensable right knee condition, and Plaintiff is thus entitled to a waiver of the limitations period of N.C. Gen. Stat. § 97-25.1 for such treatment.
6. Plaintiff is entitled to have Defendants authorize and pay for the treatment recommended by Dr. Humble for Plaintiff's left knee condition, including but not limited to *Page 12 
diagnostic testing and imaging, surgery, physical therapy, prescriptions, injections and mileage, subject to the limitations period of N.C. Gen. Stat. § 97-25.1.
7. As the issue of permanent partial disability (PPD) compensation for Plaintiff's left knee is not proper at this time and Plaintiff has not reached MMI, Plaintiff should not be compelled to now execute a Form 26A for his left knee. N.C. Gen. Stat. § 97-31.
8. Plaintiff is not entitled to an award of temporary total disability (TTD) compensation based on the record before the Full Commission, as he was paid salary continuation for all times he was out of work for his compensable left and/or right knee condition(s) prior to the hearing before the Deputy Commissioner. N.C. Gen. Stat. §§ 97-29 and 97-42.
9. Defendants have not defended this claim without reasonable grounds, and Plaintiff is thus not entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1.
10. Plaintiff's counsel is entitled to recover attorney's fees pursuant to N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay for all treatment that Plaintiff has received since October 30, 2008 for his compensable right knee condition with and/or at the direction of Dr. Humble, including but not limited to diagnostic testing and imaging, surgery, physical therapy, prescriptions, injections and mileage. To any extent that Plaintiff and/or any third-party payor(s) have paid for any such treatment, Defendants shall reimburse such payor(s) in full. *Page 13 
2. Dr. Humble is hereby designated as Plaintiff's treating physician for his compensable right knee condition, and Defendants shall, without application of the N.C. Gen. Stat. § 97-25.1 limitations period, authorize and pay for the treatment recommended by Dr. Humble for said condition, including but not limited to diagnostic testing and imaging, surgery, physical therapy, prescriptions, injections, and mileage.
3. Dr. Humble is hereby designated as Plaintiff's treating physician for his compensable left knee condition, and Defendants shall, subject to the limitations period of N.C. Gen. Stat. § 97-25.1, authorize and pay for the treatment recommended by Dr. Humble for said condition, including but not limited to diagnostic testing and imaging, surgery, physical therapy, prescriptions, injections and mileage.
4. Within 15 days of receipt of this Opinion and Award, Plaintiff's counsel should submit to the Full Commission an affidavit of time spent defending this appeal before the Full Commission pursuant to the provisions of N.C. Gen. Stat. § 97-88. Thereafter, the undersigned will file an Order setting Plaintiff's attorney's fee.
5. Defendants shall pay the costs. As part of those costs, if they have not done so already, Defendants shall pay an expert witness fee to Dr. DuPuy in the amount of $1,102.00. Dr. Humble waived an expert witness fee.
This the 13th day of April 2011.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING: *Page 14 
 S/_____________ LINDA CHEATHAM COMMISSIONER
 S/_____________ CHRISTOPHER SCOTT COMMISSIONER *Page 1