***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission REVERSES the Opinion and Award of Deputy Commissioner Stanback and enters the following Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are properly before the Industrial Commission and that the Industrial Commission has jurisdiction over the subject matter. *Page 2 
2. All the parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. Plaintiff suffered an injury by accident on January 19, 2006.
4. Defendants dispute that plaintiff was an employee of the Defendant-Employer Brickey Acoustical, Inc. However, it is stipulated that Brickey Acoustical, Inc. obtained a policy of insurance from State Farm Fire and Casualty Company which covered plaintiff and pursuant thereto, Defendants filed a Form 60 dated February 13, 2006 accepting the compensability under the Workers' Compensation Act for multiple fractures to plaintiff's right femur arising from the injury on January 19, 2006.
5. Defendant-Employer Brickey Acoustical, Inc. produced a Form 22 which showed payments to plaintiff totaling $13,933 and that plaintiff has been paid compensation at the rate of $478.08 based upon a presumptive average weekly wage of $717.09.
6. On or about June 21, 2007 plaintiff filed a Form 18 claiming an injury to his right femur/leg when he fell from a ladder on January 19, 2006.
7. Defendants filed a Form 33 Request for Hearing on February 29, 2008 appealing from the February 14, 2008 Administrative Order by Executive Secretary Tracey H. Weaver approving a Form 18M for medical treatment related to plaintiff's right lower extremity.
8. Plaintiff filed a Form 33 Request for Hearing on April 15, 2008 appealing from the April 4, 2008 Administrative Order of Special Deputy Commissioner Keischa Lovelace denying plaintiff's motion for medical treatment for his back.
9. On April 15, 2008 plaintiff filed an amended Form 18 claiming an injury to his right femur/leg and back when he fell from a ladder on January 19, 2006.
10. Documents entered into evidence include the following: *Page 3 
 a. Stipulated Exhibit #1 — Industrial Commission forms, pleadings and orders
 b. Stipulated Exhibit #2 — Plaintiff's Medical Records
 c. Stipulated Exhibit #3 — Cash journal
 d. Stipulated Exhibit #4 — Pre-Trial Agreement
 e. Plaintiff's Exhibit #1 — Plaintiff's job search
 f. Plaintiff's Exhibit #2 — 1099's for Plaintiff
 g. Defendants' Exhibit #1 — List of workers hired and rates of pay
 *********** ISSUES TO BE DETERMINED
1. Whether plaintiff's subsequent hip and back pain/conditions are a direct and natural result of plaintiff's original compensable right leg injury.
2. Whether the February 14, 2008 Administrative Order approving plaintiff's Form 18M was properly issued by the Executive Secretary's office.
3. What is plaintiff's average weekly wage pursuant to N.C. Gen. Stat. § 97-2(5)?
4. Whether plaintiff has met his burden of proof of ongoing disability following the release by his treating physicians.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACTS *Page 4 
1. At the time of the hearing before the deputy commissioner plaintiff was a fifty (50) year-old male who earned a GED while serving in the United States Air Force. Plaintiff also received some computer training in 1976.
2. On January 19, 2006, plaintiff sustained an admittedly compensable injury by accident, namely a right comminuted distal intercondylar femur fracture, while working as a subcontractor for defendant-employer to perform sheetrock finishing. While standing on an extension ladder approximately ten feet up, it slid from beneath him causing him to ride the ladder to the concrete floor below him resulting in his right knee area striking a rung on the ladder.
3. At the time of his compensable injury, plaintiff was covered by a policy of insurance the defendant-employer had obtained from State Farm Fire and Casualty.
4. At the time of his compensable injury plaintiff was working as a drywall finisher and was assisted by his wife. Defendant-employer paid plaintiff and his wife on an hourly basis and paid plaintiff and his wife in one pay check for the work performed by both of them. Plaintiff was paid $14.00 per hour and plaintiff's wife earned $10.00 per hour. Therefore, defendant-employer paid to them in one paycheck $24 per hour for the work they performed together.
5. Defendant-employer filed with the Industrial Commission a completed Form 22 wage chart showing wages paid to plaintiff totaling $13,933.00 and a Form 60 indicating an average weekly wage of $717.09. Plaintiff has received benefits pursuant to N.C. Gen. Stat. § 97-29 in the amount of $478.08 since January 19, 2006.
6. However, the wage chart was completed based upon the rate of earnings by both plaintiff and his wife, not just plaintiff's earnings. Based upon the calculations from the wage *Page 5 
chart and the greater weight of the credible evidence, plaintiff worked approximately 580.54 hours at $14.00 per hour with total earnings for himself of $8,127.56.
7. As plaintiff's employment with defendant-employer prior to his injury was for a period of time less than 52 weeks, plaintiff's average weekly wage should be determined by dividing the earnings during his period of employment by the number of weeks and parts thereof for which he earned wages with defendant-employer. The Form 22 indicates that plaintiff worked a total of 136 days or 19.4 weeks for defendant-employer thereby resulting in an average weekly wage of $418.95 with a corresponding compensation rate of $279.31.
8. On the date of plaintiff's injury, plaintiff was transported by ambulance to the emergency department of Wake Forest Baptist Hospital in Winston-Salem, North Carolina complaining of right knee and leg pain. He was diagnosed with a right distal femur fracture and admitted to the hospital.
9. On January 20, 2006, plaintiff underwent an open reduction and internal fixation with percutaneous screw stabilization of the femur fracture by Dr. John P. Birkedal at Wake Forest Baptist Hospital. Plaintiff remained at Wake Forest Baptist Hospital until January 23, 2006 when he was released.
10. At the February 6, 2006 post operative follow up, plaintiff displayed full extension of the knee and flexion at approximately 85 degrees. X-rays revealed early healing of the femur fracture. On March 20, 2006, plaintiff presented with improvement and no significant complaints, and it was noted that plaintiff had full extension and flexion at 100 degrees. Plaintiff was to start weight bearing at 25 pounds.
11. On May 1, 2006, Dr. Birkedal continued plaintiff's physical therapy and released plaintiff to return to work at a sedentary level effective May 8, 2006. *Page 6 
12. On May 31, 2006, Dr. Birkedal continued plaintiff in physical therapy and referred plaintiff to Dr. Ferguson for an evaluation of the medial knee pain and patellofemoral joint pain. Dr. Birkedal noted that plaintiff could return to work seven to eight hours per day on June 1, 2006 with restrictions of lifting no more than ten pounds and occasionally lifting or carrying ledgers or small tools, walking and standing occasionally.
13. On July 7, 2006 plaintiff was evaluated by Dr. Kevin Supple of Greensboro Orthopaedic Center for complaints of right knee pain with weight bearing. Following a physical examination and review of diagnostic films, Dr. Supple diagnosed plaintiff with persistent right knee pain and mechanical symptoms, particularly with weight bearing and possible occult meniscal tear versus intra-articular chondral loose body or occult chondral defect. He recommended plaintiff consider a right knee diagnostic arthroscopy and restricted plaintiff to sedentary work with no bending, stooping, or squatting and no prolonged standing or sitting.
14. On August 8, 2006, Dr. Supple performed a right knee diagnostic arthroscopy during which he found a degenerative tear of the mid-third of the lateral meniscus for which he performed a partial lateral meniscectomy.
15. On August 16, 2006, Plaintiff returned to see Dr. Supple for his first post-op examination. Dr. Supple ordered physical therapy and weight bearing as tolerated and took plaintiff out of work.
16. Physical therapy was resumed with Bob Ess, PT at Prybylo-Ess Physical Therapy, Inc. on August 18, 2006.
17. On October 9, 2006 plaintiff returned to Dr. Supple with complaints of popping in his right knee. Dr. Supple diagnosed plaintiff with persistent right anterior knee pain following arthroscopy and advised plaintiff to continued physical therapy. *Page 7 
18. On November 13, 2006, plaintiff returned to Dr. Supple with complaints of pain and popping in his hip and his knee giving away. Dr. Supple performed a right hip examination and noted plaintiff had obvious discomfort with passive right hip motion, with palpation around the hip girdle, with hip flexion and with resisted testing. During his examination, Dr. Supple noted plaintiff had a reducible snapping and popping as he moved from a flexed position to an extended position. An x-ray of the right hip revealed no obvious abnormalities.
19. Dr. Supple diagnosed plaintiff with right hip pain with snapping hip syndrome and suspects that it is related to a hip flexor tenosynovitis which was likely exacerbated by the physical therapy treatment. He also diagnosed plaintiff with right knee chrondromalacia and chronic pain. Dr. Supple continued physical therapy modified such that it did not exacerbate the hip pain and also recommended continuing the glucosamine and chondroitin sulfate regimen.
20. On January 18, 2007, upon referral by Dr. Supple, plaintiff reported to Greensboro Orthopaedic Sports Rehabilitation Center to undergo a functional capacity evaluation (FCE) which was performed under the direction of Steven M. Walton, MPT. Plaintiff put forth full physical effort during the testing. Based upon the FCE, plaintiff is capable of medium-duty work with no lifting more than 25 pounds from floor to knuckle, no lifting more than 30 pounds from knuckle to shoulder, no lifting more than 45 pounds from shoulder to overhead, no carrying more than 25 pounds for a distance of 30 feet, all on an occasional basis. Plaintiff is also restricted to occasional balancing, left and bilateral kneeling, stair climbing with left knee, static and dynamic standing, and walking. The FCE further indicated that plaintiff is not to crouch, squat, crawl, kneel on right knee, or climb ladders. Plaintiff performed the FCE with the use of bilateral crutches. *Page 8 
21. On January 24, 2007, Dr. Supple provided plaintiff with a work note indicating he was able to return to permanent light duty effective January 24, 2007 with medium physical demand level.
22. On March 9, 2007, Dr. Supple removed two screws and washers from plaintiff's right distal femur.
23. On April 18, 2007, Dr. Supple noted that plaintiff continued to have intermittent difficulties with right knee pain and mechanical symptoms. Dr. Supple indicated plaintiff was at maximum medical improvement (MMI) from an administrative standpoint and released plaintiff to work activities as outlined by the FCE.
24. On May 16, 2007 Dr. Supple provided a written note reiterating plaintiff was at MMI from an administrative standpoint and gave plaintiff a thirty percent (30%) permanent partial impairment rating to his right leg.
25. On October 3, 2007, Dr. Supple executed a Form 18M Employee's Application for Additional Medical Treatment opining there is a substantial risk plaintiff would need additional medical treatment in the form of a knee replacement and arthrosis management. Defendants disputed plaintiff's Form 18M. On February 14, 2008, Executive Secretary Tracey H. Weaver issued an Administrative Order approving the Form 18M.
26. On October 31, 2007, plaintiff was examined by Dr. Peter G. Dalldorf of Guilford Orthopaedic and Sports Medicine Center for a second opinion on plaintiff's knee condition. During this examination by Dr. Dalldorf, plaintiff complained of persistent right knee pain, popping in the right knee, and occasional sharp pain. Dr. Dalldorf obtained x-rays of the knee and reviewed old films of the right knee that had been taken previously. Plaintiff had nearly full range of motion and had no weakness in knee joint. Dr. Dalldorf felt that Dr. Supple's 30% *Page 9 
rating was high and very generous. Dr. Dalldorf did not find problems or complaints of hip or back pain. Dr. Dalldorf agreed with the restrictions previously placed by Dr. Supple.
27. On May 9, 2008, plaintiff complained to Dr. Dalldorf that he was worse and now had popping in his right knee, hip, and ankle. Dr. Dalldorf noted that plaintiff walked with an altered gait using a cane and also noted medial and lateral joint line pain. X-rays were again obtained. Dr. Dalldorf's diagnosis remained unchanged, and he opined that plaintiff would benefit from another evaluation with a physical therapist. Dr. Daldorf also noted that plaintiff had a good range of motion in his hip which seemed painless and a full range of motion in his ankle.
28. On July 30, 2008, plaintiff returned to Dr. Dalldorf complaining of significant right knee pain worsening. During his exam, Dr. Dalldorf noted pain with patellofemoral compression as well as some medial and lateral joint line pain. Dr. Dalldorf ordered an MRI of the right knee and provided a prescription for Vicodin. He also opined that plaintiff's back pain is probably related to the altered gait which Dr. Dalldorf related to his right knee injury. Plaintiff underwent an MRI of his right knee on August 7, 2008. The MRI did not show any appreciable defects within the knee.
29. On August 15, 2008, Dr. Dalldorf noted plaintiff's exam was basically normal and that there were no mechanical reasons for plaintiff's pain. He referred plaintiff to pain management and an exercise program noting he did not think plaintiff required additional orthopaedic intervention. Again, he agreed with the 30% impairment rating, placed plaintiff at MMI, and released him from his care. Dr. Dalldorf did not understand why plaintiff had so much difficulty or why plaintiff needed to walk with a cane. *Page 10 
30. Dr. Supple and Dr. Dalldorf agreed that plaintiff did not currently need a knee replacement, and Dr. Dalldorf was of the opinion that plaintiff did not face a substantial risk of needing a future right knee replacement. Neither Dr. Supple or Dr. Dalldorf have further treatment options to offer plaintiff.
31. Based on the pain management referral by Dr. Dalldorf, defendants directed plaintiff's care to Dr. Hans Hansen of The Pain Relief Centers in Salisbury, North Carolina where he was seen initially on October 3, 2008. On August 7, 2009 Dr. Hansen noted that plaintiff had not improved or declined over the past year and that plaintiff was at MMI from a pain management perspective. Dr. Hansen discharged plaintiff on August 7, 2009 and referred plaintiff for an FCE.
32. Following an FCE on August 10, 2009 in which plaintiff engaged in self-limiting behavior, Dr. Hansen opined on August 28, 2009 that plaintiff could return to work at light/medium job level. Plaintiff has not returned to work in any capacity.
33. On August 1, 2008, plaintiff began vocational rehabilitation with Anthony Enoch, MPA, CDMC, QRP of Wright Rehab Services. Mr. Enoch met with plaintiff on several occasions and never witnessed plaintiff walk with assistance of or carry a cane. Based upon plaintiff's permanent work restrictions, Mr. Enoch did not think plaintiff could perform outside work. Therefore, he focused plaintiff's retraining on computer education.
34. Plaintiff began a job search in 2007. However, plaintiff focused his search on locating construction jobs that were not within his restrictions and positions that paid $15.00 or more per hour and at his preferred pay of $24.00 per hour which are greater than his pre-injury wages. Based upon these unreasonable job searches, plaintiff limited his ability to find suitable employment. *Page 11 
35. The Full Commission finds based upon the greater weight of the evidence that plaintiff has failed to conduct a reasonable job search.
36. Plaintiff has failed to prove that he has not been able to obtain employment since August 7, 2009 in the same or other employment or that it would be futile for him to do so.
37. The Full Commission finds based upon the greater weight of the evidence that plaintiff has reached MMI and does not require further medical treatment. Plaintiff has failed to prove that there is a substantial risk of needing future medical treatment for his right knee.
38. Plaintiff has failed to present sufficient evidence that his right hip and back pain is a direct and natural consequence of his original compensable leg injury arising out of his employment with the defendant-employer.
39. Plaintiff filed a motion dated December 30, 2009 for a change of medical treatment pursuant to N.C .Gen. Stat. § 97-25 and a motion for examination pursuant to N.C. Gen. Stat. § 97-27(b).
 ***********
Based on the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident on January 19, 2006 arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As plaintiff's employment with defendant-employer prior to his injury was for a period of time less than 52 weeks, plaintiff's average weekly wage should be determined by dividing the earnings during his period of employment by the number of weeks and parts thereof *Page 12 
for which he earned wages with defendant-employer. Plaintiff worked a total of 19.4 weeks for defendant-employer with total earnings of $8,127.56 resulting in an average weekly wage of $418.95 with a corresponding compensation rate of $279.31. N.C. Gen. Stat. § 97-2(5).
3. As plaintiff has failed to establish that his right hip and back problems are a direct and natural consequence of his January 19, 2006 compensable injury by accident, plaintiff is not entitled to receive medical treatment for these conditions. N.C. Gen. Stat. § 97-25; English v. J.P. Stevens Co.,98 N.C. App. 466, 391 S.E.2d 499 (1990); Roper v. J.P.Stevens Co., 65 N.C. App. 69, 308 S.E.2d 485 (1983), disc.review denied, 310 N.C. 309, 312 S.E.2d 352 (1984).
4. Plaintiff is not at a substantial risk of requiring future medical treatment as a result of his compensable right leg/knee injuries. Therefore plaintiff's Form 18M should be denied. N.C. Gen. Stat. § 97-25.1.
5. Plaintiff has the burden of proving disability, defined as a loss of wage earning capacity. Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). In order to meet the burden of proving disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v.Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than her pre-injury wages. *Page 13 Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes ProductDistribution, supra. In the case sub judice, as of August 7, 2009, plaintiff has been capable of some work but has failed to make a reasonable effort to find suitable employment within his restrictions and has failed to prove that it would be futile for him to do so. Therefore, plaintiff has failed to establish that he is entitled to ongoing disability benefits pursuant to N.C. Gen. Stat. § 97-29.
6. Plaintiff is entitled to temporary total disability benefits at the rate of $279.31 per week from January 19, 2006 through August 7, 2009. N.C. Gen. Stat. § 97-29.
7. Plaintiff is entitled to a 30% permanent partial disability rating to his right leg which is equivalent to 60 weeks at the rate of $279.31 per week totaling $16,758.60. N.C. Gen. Stat. § 97-31(15). Defendants are entitled to a credit for over payment of temporary total disability and for benefits paid after August 7, 2009 after plaintiff reached maximum medical improvement. Collins v. Speedway Motor Sports Corp.,165 N.C. App. 113, 598 S.E.2d 185 (2004); Arnold v. Wal-Mart,154 N.C. App. 482, 571 S.E.2d 888 (2002).
8. As plaintiff has failed to establish that he is entitled to additional medical treatment, plaintiff's motion for a change of medical treatment should denied. N.C. Gen. Stat. § 97-25.
9. Plaintiff is not entitled to an examination by a surgeon selected by him pursuant to N.C. Gen. Stat. § 97-27(b). Therefore, plaintiff's motion for a medical examination pursuant to N.C. Gen. Stat. § 97-27(b) should be denied.
 ***********
Based on the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission makes the following award: *Page 14 
 AWARD
1. Defendants shall pay to plaintiff temporary total disability benefits at the rate of $279.31 per week from January 19, 2006 through August 7, 2009. N.C. Gen. Stat. § 97-29.
2. Defendants shall pay to plaintiff permanent partial disability for 60 weeks at the rate of $279.31 per week totaling $16,758.60 subject to a credit for temporary total disability benefits paid after August 7, 2009 after plaintiff reached maximum medical improvement.
3. Plaintiff's request for medical treatment related to her hip and back is DENIED.
4. Plaintiff's Form 18M Employee's Application for Additional Medical Compensation is DENIED.
5. Plaintiff's motion for a change in medical treatment pursuant to N.C. Gen. Stat. § 97-25 and for an examination pursuant to N.C. Gen. Stat. § 97-27(b) is hereby DENIED.
6. Defendants shall pay to plaintiff's counsel 25% of the sums due plaintiff for temporary total disability and permanent partial disability compensation.
7. Each side shall bear its own costs.
This the 24th day of February 2010.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ DIANNE C. SELLERS COMMISSIONER