***********
Upon review of the competent evidence of record, with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission finds no good grounds to receive further evidence, or to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' *Page 2 
Compensation Act.
2. An employment relationship existed between the parties at all times relevant to these proceedings.
3. The date of Plaintiff's accident was July 21, 2005.
4. Plaintiff's average weekly wage is $689.96, yielding a compensation rate of $460.00.
5. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One: Plaintiff's medical records and North Carolina Industrial Commission forms and filings;
 b. Stipulated Exhibit Two: Plaintiff's out-of-work notes;
 c. Stipulated Exhibit Three: Defendant's payment history for Plaintiff's workers' compensation claim.
 *********** ISSUES
The issues to be determined are:
1. Whether Plaintiff sustained a compensable change in condition?
2. Whether Plaintiff is entitled to any further workers' compensation benefits?
3. Whether the Durham Veteran's Administration Medical Center, under the supervision of Dr. Tally Edward Lassiter, Jr., should be Plaintiff's authorized health care provider?
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes *Page 3 
the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, Plaintiff was 44 years old, with a date of birth of October 31, 1965. Plaintiff served in the United States Marines Corps for over 14 years, and obtained the rank of gunnery sergeant. While serving in the Marine Corps, Plaintiff developed right knee arthritis.
2. Since 1998, Plaintiff has been working as a prison guard with the State of North Carolina. On July 21, 2005, while working for Defendant as a prison guard at North Carolina Central Prison, Plaintiff sustained right knee, low back, and right wrist injuries when he fell four to five feet from a ladder at work. Plaintiff's right knee injury resulted in acute cartilage and bone lesions with edema. Defendant accepted the compensability of Plaintiff's July 21, 2005 work injury via a Form 60.
3. As a result of Plaintiff's July 21, 2005 work injury, he was initially unable to work from July 22, 2005 through December 1, 2005. Plaintiff received salary continuation during this period.
4. On September 6, 2005, Dr. Brian Thomas Szura, an orthopaedist, performed right knee arthroscopic surgery, which did not provide Plaintiff with much relief. On November 28, 2005, Plaintiff received a steroid injection in his right knee due to continued right knee pain.
5. On December 1, 2005, Plaintiff returned to work for Defendant, but continued to have right knee pain and swelling while trying to perform his prison guard duties. On January 3, 2006 and February 14, 2006, Plaintiff returned to Dr. Szura with complaints of right knee pain and swelling. In March 2006, Plaintiff underwent three visco-supplementation injections administered by Dr. Szura. *Page 4 
6. Dr. Szura found that Plaintiff was at maximum medical improvement on May 16, 2006 and assigned him a 10 percent permanent partial disability rating. Dr. Szura felt that Plaintiff would continue to experience exacerbations of knee pain and swelling over the next 18 to 24 months. Plaintiff received permanent partial disability compensation for the rating issued by Dr. Szura pursuant to a Form 21 agreement which the North Carolina Industrial Commission approved on July 25, 2007.
7. In February 2007, while walking down a flight of stairs at work, Plaintiff's right knee gave out on him, and became swollen and painful. On February 13, 2007, Plaintiff returned to Dr. Szura, who provided him with work restrictions that included no squatting, stooping, or kneeling, and minimal stair climbing. Dr. Szura noted that Plaintiff would be undergoing right knee magnetic resonance imaging (MRI) at the Durham Veteran's Administration Medical Center (Durham VA) in the near future.
8. Plaintiff became dissatisfied with the level of care he was receiving from Dr. Szura following his September 6, 2005 right knee arthroscopic surgery. Despite Plaintiff's worsening right knee complaints, Dr. Szura continued to offer him injections and medication. According to Plaintiff, Dr. Szura told him, "the most we can do — the only thing you're authorized to get is shots."
9. Plaintiff's right knee symptoms continued to worsen over time. On May 18, 2007, Plaintiff underwent a right knee MRI ordered by his treating physicians at the Durham VA, and on June 13, 2007, a Durham VA physician noted that the right knee MRI revealed meniscus pathology, cartilage abnormalities, and bursitis.
10. In September 2007, Plaintiff's right knee locked up on him again. On September 19, 2007, Plaintiff underwent a right knee injection at the Durham VA, which provided only *Page 5 
temporary relief. On October 3, 2007, a Durham VA physician scheduled Plaintiff for right knee arthroscopic surgery, with the hope that this second knee surgery would fix Plaintiff's right knee complaints and alleviate his symptoms so that he could successfully return to work without the need for additional surgeries. On November 13, 2007, Plaintiff underwent a second right knee arthroscopic surgery. Although Plaintiff did not seek authorization prior to undergoing the November 13, 2007 right knee arthroscopic surgery at the Durham VA, that issue is not before the Full Commission at this time.
11. From November 13, 2007 through February 19, 2008, Plaintiff was out of work due to his right knee arthroscopic surgery. On August 13, 2008, the parties entered into a Consent Order approved by Deputy Commissioner Phillip A. Baddour, III in which Defendant agreed to pay Plaintiff temporary total disability compensation from January 22, 2008 through February 19, 2008 via a Form 62 reinstatement of compensation. Defendant filed the Form 62 on August 18, 2008. The Consent Order stated, "Plaintiff shall continue his treatment with Dr. Vaughn or with Dr. Fajhenbaum. If neither doctor is able to treat, the parties shall agree upon another treating doctor." Neither of these physicians was available to treat Plaintiff, and so the parties ultimately agreed upon Dr. John Bryan Chiavetta, an orthopaedist. This Consent Order also stated, "[i]ndemnity for the period of November 13, 2007 through January 21, 2008 is unresolved by the parties." That issue remains unresolved and is not before the Full Commission at this time.
12. On August 14, 2008, Plaintiff returned to the Durham VA for treatment, prior to being scheduled to see a physician agreed upon by the parties as set forth in the Consent Order. On October 10, 2008, Plaintiff saw Dr. Chiavetta. Dr. Chiavetta recommended conservative treatment as long as possible. Plaintiff next saw Dr. Chiavetta on June 18, 2009. At that time, *Page 6 
Plaintiff already had the recommended right knee replacement surgery.
13. When Plaintiff returned to work for Defendant in February 2008, it appeared that his November 13, 2007 right knee arthroscopic surgery did not provide the relief anticipated, as he continued to have right knee complaints. When Plaintiff transferred to a position at a different part of his assigned prison which required him to go up and down stairs, his right knee symptoms worsened. Plaintiff presented to the Durham VA following his February 2008 return to work with severe right knee swelling, and his physician recommended right knee replacement surgery.
14. In March 2009, prior to undergoing the right knee replacement surgery, Plaintiff, through counsel, notified Defendant of the recommended surgery, and requested authorization for it. Defendant declined to authorize the right knee replacement surgery. Defendant's witness, Ms. Rebecca Joseph of Corvel, testified that she became aware that Plaintiff was seeking right knee replacement surgery in March 2009, the month before the knee replacement surgery.
15. On April 21, 2009, Plaintiff underwent right knee replacement surgery performed by orthopaedic residents under the supervision of Dr. Talley Edward Lassiter, Jr., an orthopaedist with fellowship training in sports medicine, arthroscopy, and knee trauma at the Durham VA. As a result of Plaintiff's right knee replacement surgery, he was unable to work for a period of time beginning April 21, 2009. Plaintiff's right knee symptoms improved post-operatively, and he returned to work when permitted by Defendant as a prison guard on November 20, 2009.
16. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's July 21, 2005 work injury aggravated his pre-existing right knee arthritis to such an extent that he required two arthroscopic surgeries and that such aggravation contributed to and accelerated his need for right knee replacement surgery. Plaintiff's right knee replacement surgery was a direct and natural result of his July 21, 2005 admittedly compensable work injury. *Page 7 
17. Dr. Szura opined that Plaintiff's need for right knee replacement surgery "would primarily be the result of his pre-existing degenerative changes," but he could not say to a reasonable degree of medical certainty that there was not some exacerbation or minimal acceleration of Plaintiff's pre-existing right knee pathology due to his July 21, 2005 work injury.
18. Although Dr. Chiavetta initially testified that he could not determine to a reasonable degree of medical certainty whether Plaintiff's work injury accelerated his need for right knee replacement surgery, when advised that his opinions needed to be expressed in terms of more likely than not, or probably, or a 51 percent degree of certainty, Dr. Chiavetta testified, "I think his injury did contribute to his need for knee replacement." Dr. Chiavetta also opined that there is a greater than 50 percent likelihood that Plaintiff's July 21, 2005 work injury contributed to his need for right knee replacement surgery, that the knee replacement surgery was a reasonable option for Plaintiff, and that the radiographic findings of the right knee were sufficient to support performing the replacement surgery.
19. Dr. Lassiter opined that Plaintiff's July 21, 2005 work injury aggravated his pre-existing right knee injury and pre-existing right knee arthritis, causing the need for further medical treatment. Dr. Lassiter also opined that the aggravation of Plaintiff's pre-existing right knee pathology "shortened the time for which he would need a knee replacement surgery . . . this sped up the process."
20. The Full Commission gives greater weight to the opinion testimony of Dr. Chiavetta and Dr. Lassiter over any contrary opinions of Dr. Szura, and finds as fact that Plaintiff's April 21, 2009 right knee replacement surgery was a direct and natural consequence of his July 21, 2005 work injury. Plaintiff never permanently healed between the time he fell from the ladder at work on July 21, 2005 and the time he underwent the right knee replacement surgery *Page 8 
on April 21, 2009.
21. The Full Commission finds as fact that Plaintiff's need for right knee replacement surgery and the time Plaintiff needed to be out of work related thereto constituted a substantial change of condition.
22. With respect to the periods of disability in contention herein, the Full Commission finds as fact that from April 21, 2009 through November 19, 2009, Plaintiff was medically disabled from any employment as a result of his right knee replacement surgery and recuperation period. Plaintiff is entitled to temporary total disability compensation from Defendant at the rate of $460.00 per week during said period.
23. The Full Commission finds as fact that Plaintiff's testimony is credible, despite occasional, minor inconsistencies between his testimony and some of the medical records. The Full Commission further finds that Plaintiff complied with the treatment recommendations of all physicians authorized by Defendant to provide treatment for his July 21, 2005 work injury, and that he never refused to see any physicians selected by Defendant.
25. Based upon the greater weight of the evidence, the Full Commission also finds that the Durham VA, under the supervision of Dr. Lassiter, should be Plaintiff's authorized health care provider. The treatment Plaintiff previously received through the Durham VA was reasonably required to effect a cure, to give relief, and/or to lessen his period of disability.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On July 21, 2005, Plaintiff sustained an admittedly compensable injury by accident *Page 9 
arising out of and in the course of his employment with Defendant to his right knee. N.C. Gen. Stat. § 97-2(6) (2009).
2. Plaintiff's April 21, 2009 right knee replacement surgery is a direct and natural consequence of his July 21, 2005 work injury. When determining whether medical treatment is sufficiently related to an admittedly compensable work injury, the legal standard is whether the medical treatment is "a direct and natural result of the compensable injury." If the medical treatment is a direct and natural consequence of the work injury, then it is within the chain of causation. English v. J.P. Stevens Co.,98 N.C. App. 466, 391 S.E.2d 499 (1990); Starr v. Charlotte PaperCo., 8 N.C. App. 604, 175 S.E.2d 342 (1970). The opinion testimony of Dr. Chiavetta and Dr. Lassiter establishes the chain of causation between Plaintiff's July 21, 2005 admittedly compensable work injury and the need for his right knee replacement surgery. Additionally, there is a presumption, which Defendant did not rebut, that Plaintiff's right knee replacement surgery is directly related to his compensable right knee injury, based upon Defendant's Form 60 admission of liability for an injury by accident to his right knee. Perez v. American Airlines,174 N.C. App. 128, 620 S.E.2d 288 (2005).
3. Plaintiff's need for right knee replacement surgery and the time Plaintiff needed to be out of work as a result of the surgery constituted a substantial change of condition. N.C. Gen. Stat. § 97-47 (2009).
4. From April 21, 2009 through November 19, 2009, Plaintiff was medically disabled from any employment as a result of his right knee replacement surgery and recuperation therefrom, and is entitled to temporary total disability compensation for this period of time in the amount of $460.00 per week. N.C. Gen. Stat. § 97-29 (2009);Russell v. Lowes Prod. Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). Defendant is not excused from paying *Page 10 
Plaintiff temporary total disability compensation for the period he was out of work due to his right knee replacement surgery on the ground that it did not authorize the surgery. Kanipe v. LaneUpholstery, 356 N.C. 437, 572 S.E.2d 784 (2002). Plaintiff's right knee replacement surgery was a reasonable option for him and is supported by radiographic findings, as well as Plaintiff's continuing symptoms. Plaintiff timely requested authorization from Defendant for the right knee replacement surgery prior to undergoing it. N.C. Gen. Stat. § 97-25 (2009).
5. The treatment Plaintiff received through the Durham VA was reasonably necessary in order to effect a cure, to give relief, and/or to lessen his period of disability, and Defendant is obligated to pay for such treatment. The North Carolina Industrial Commission may at any time upon request of an employee order a change of treatment and designate other treatment suggested by the injured employee. The Durham Veteran's Administration Medical Center, under the supervision of Dr. Tally Edward Lassiter, Jr., is hereby authorized to provide treatment to Plaintiff in connection with his July 21, 2005 work injury. N.C. Gen. Stat. §§ 97-2(19),97-25, 97-25.1); Schofield v. Great Atl. Pac. Tea Co.,299 N.C. 582, 264 S.E.2d 56 (1980).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendant shall pay temporary total disability compensation to Plaintiff at the rate of $460.00 from April 21, 2009 through November 19, 2009. The accrued compensation shall be paid in a lump sum.
2. The Durham Veteran's Administration Medical Center, under the supervision of Dr. Tally Edward Lassiter, Jr., is hereby authorized to provide treatment to Plaintiff in connection *Page 11 
with his July 21, 2005 work injury. Defendant shall pay all medical expenses related to such treatment in accordance with the provisions of the North Carolina Workers' Compensation Act.
3. A reasonable attorney's fee of 25 percent of the compensation due Plaintiff under paragraph one is approved for Plaintiff's counsel. Defendant shall deduct and pay directly to Plaintiff's counsel 25 percent of the accrued compensation owed to Plaintiff.
4. Defendant shall pay the costs of these proceedings.
This the __ day of September 2010.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1