***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties and their representatives. Upon reconsideration, the Full Commission reverses the Opinion and Award of Deputy Commissioner Harris.
 *********** EVIDENTIARY MATTERS
Defendants submitted a motion to add newly discovered evidence, specifically, surveillance evidence of Plaintiff for purposes of rebuttal of Plaintiff's testimony as to his disability, medical status, and employment. The Full Commission GRANTS Defendants' motion to add evidence including the surveillance records and DVD's that were performed on *Page 2 
February 27, 2010 and March 1, 2010, resulting in 341 minutes of video accompanied by a written report. An affidavit from the employer certified that the man in the video was Plaintiff.
On November 22, 2010, Plaintiff filed a motion to admit additional evidence and to submit a proposed Opinion and Award. Plaintiff's motion is hereby DENIED.
 ***********
The following documentary evidence was received:
 Exhibits 1. Stipulated Exhibit Number 1, Pre-Trial Agreement
 2. Stipulated Exhibit Number 2, IC Forms,
 3. Stipulated Exhibit Number 3, medical records
 4. Stipulated Exhibit Number 4, Plaintiff's responses to discovery.
 5. Defendants' Exhibit Number 1, January 7, 2009 discovery
 6. Defendants' Exhibit Number 2, consent to drug testing
 7. Defendants' Exhibit Number 3, Plaintiff's responses to discovery
 8. Defendants' Exhibit Number 4, 2007, 2008 tax returns
 9. Defendants' Exhibit Number 5, job application
 10. Defendants' Exhibit Number 6, Form 22 for similar employee
 11. Deposition of Dr. Welshofer (with exhibit 1)
 12. Deposition of Dr. DuPuy
 13. Deposition of Cassie Smith and Dereck Coley
 14. Defendants' Motion to Add Newly Discovered Evidence; Plaintiff's response.
 15. Three Surveillance DVD's; one taken February 27, 2010, and two taken March 1, 2010. *Page 3 
 ***********
The Full Commission finds as fact and concludes as matters of law the following stipulations of the parties:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and that the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act;
3. All parties have been properly designated and there is no question as to misjoinder or nonjoinder of parties;
4. The carrier on the risk for the Defendant in this claim was National Trust Insurance Co.;
5. Plaintiff sustained an admittedly compensable injury on April 6, 2006 arising out of and in the course and scope of his employment and the same was admitted on a Form 60;
6. An employment relationship existed between the employee and employer on April 6, 2006;
7. Defendants filed a Form 24 Application on June 14, 2007. Plaintiff subsequently responded on July 2, 2007; on August 9, 2007, Defendants Form 24 Application was approved by Administrative Decision and Order of Special Deputy Commissioner Christopher Rawls, and Defendants were approved to terminate compensation effective June 15, 2007. Plaintiff filed a Motion for Reconsideration with Special Deputy Commissioner Christopher Rawls on August 14, 2007, and Defendants subsequently responded on August 24, 2007. Special Deputy Commissioner Christopher Rawls entered an Administrative Order on August 31, 2007 *Page 4 
indicating that Plaintiff had not shown good grounds to alter the Administrative Decision and Order terminating payment of compensation effective June 15, 2007; that the previous Administrative Decision and Order remained in full force and effect regarding the termination of benefits; that Plaintiff's Motion to return to his treating physician was granted; and the Defendants shall authorize and pay for a return appointment for Plaintiff with Dr. Zucker and Dr. DuPuy for the earliest feasible dates;
8. Deputy Commissioner Rideout entered a Post Conference Order on November 20, 2008, indicating that following the telephonic conference, the parties were not able to reach a resolution in this matter and that Plaintiff's Motion for an Independent Medical Evaluation with Dr. John Welshofer was granted;
9. The parties entered into a consent order on February 12, 2009 and the same was submitted to Deputy Commissioner Rowell via electronic mail on February 25, 2009.
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 34 years old with a date of birth of September 19, 1976. Plaintiff finished the ninth grade and had no further schooling or formal training. Before starting with Defendant-Employer, he had worked in roofing, welding, and installing appliances.
2. Defendant-Employer is a pipefitting contractor with its main office in Anson County, North Carolina. Plaintiff started working for Defendant-Employer in February 2006 as a pipefitter helper. His job required him to lift up to 100 pounds with help. *Page 5 
3. In addition to the base and overtime wages that Defendant-Employer paid him, Plaintiff received about $45.00 per day when he was doing out-of-town work that required overnight stays. This per diem was to be used for hotels and meals and was concordant with those expenses that Plaintiff actually incurred. Defendant-Employer did not pay the per diem to Plaintiff in lieu of wages. Rather, the per diem was paid to Plaintiff in addition to his wages only for out-of-town work and only when the customer budgeted it for the job. Plaintiff did not get to keep any money from the per diem as income and it was all used to pay for lodging, food, and travel expenses.
4. On February 25, 2009, the parties entered into a Consent Order, approved by former Deputy Commissioner Ronnie Rowell, in which they stipulated, among other things, that Plaintiff's average weekly wage is $795.00, yielding a compensation rate of $530.03, subject to potential adjustment for per diem. The parties also entered into a "Further Finding of Fact by Consent" that the issue of Plaintiff's entitlement to further compensation under N.C. Gen. Stat. § 97-30 since June 15, 2007 was "reserved without prejudice to either party."
5. On April 6, 2006, Plaintiff sustained a compound fracture to his right leg, as well as a low back injury, when a 70,000-gallon silo that he was welding rolled onto his legs.
6. That same day, Plaintiff underwent surgery with Dr. Joseph Zucker, an orthopedic surgeon, to stabilize the tibio-fibular fracture in Plaintiff's lower right leg. Plaintiff continued to treat with Dr. Zucker and underwent physical therapy for his right leg.
7. Defendants accepted Plaintiff's right leg compound fracture as compensable on a Form 60 dated April 24, 2006. Plaintiff was paid temporary total disability ("TTD") compensation in the amount of $530.03 per week, based on an average weekly wage of $795.00, while he was out of work. *Page 6 
8. Plaintiff was discharged from physical therapy on July 19, 2006 and followed up with Dr. Zucker on July 27, 2006. Dr. Zucker noted that Plaintiff still had some weakness in his right leg and was walking with a slight limp, but that he was definitely improving. Dr. Zucker released Plaintiff to return to work four hours per day for four weeks, with activities as tolerated.
9. Plaintiff did not return to work and continued to receive TTD compensation.
10. On August 28, 2006, Dr. Zucker released Plaintiff to return to full duty work with no restrictions with regard to his right leg.
11. On August 30, 2006, Plaintiff returned to Dr. Zucker with complaints of right hip and low back pain. The next day, Plaintiff began physical therapy for his low back.
12. Defendants have authorized and paid for the treatment Plaintiff has received for his low back condition, although they have never accepted said condition as compensable on a Form 60.
13. Dr. Zucker wrote Plaintiff out of work for his low back condition and recommended an MRI.
14. On September 13, 2006, Plaintiff underwent a lumbar spine MRI, which showed a large posteriorly-directed herniation at L4-5 impacting the nerve roots on the right and left at L5 and a broad-based herniation at L3-4 impacting the nerve roots on the right and left at L3.
15. Defendants sent Plaintiff to Dr. DuPuy for treatment of his low back condition beginning on September 26, 2006. Dr. DuPuy initially restricted Plaintiff to no lifting greater than 10 pounds and no prolonged bending, stooping, squatting or kneeling, among other restrictions. Plaintiff remained out of work and continued to receive TTD compensation. *Page 7 
16. Dr. DuPuy treated Plaintiff conservatively with epidural steroid injections. Plaintiff continued to report moderate to severe low back symptoms, mostly in his right buttock and right leg.
17. On October 25, 2006, Dr. Zucker noted that Plaintiff felt well enough to work with regard to his right leg. Dr. Zucker assigned a 20 percent permanent partial impairment ("PPI") rating for Plaintiff's right leg.
18. On November 22, 2006, Plaintiff underwent a right partial hemilaminectomy and discectomy at L5-S 1, with removal of a large free fragmented herniated disc, with Dr. DuPuy. Thereafter, Plaintiff participated in physical therapy for his low back.
19. On January 9, 2007, Dr. DuPuy assigned restrictions of no lifting greater than 25 pounds and no prolonged bending, stooping, squatting, kneeling or twisting, among other restrictions. Plaintiff remained out of work and continued to receive TTD compensation.
20. On January 30, 2007, Dr. DuPuy noted that Plaintiff was lifting 50 pounds in therapy. Plaintiff did not have any pain on physical examination and no prescriptions were required. Dr. DuPuy also knew of Plaintiff's pre-injury job and noted, that effective February 5, 2007, Plaintiff was released with restrictions of lifting no more than 100 pounds. Plaintiff had input on the work restrictions and release given by Dr. DuPuy. Plaintiff remained out of work and continued to receive TTD compensation.
21. On February 1, 2007, Dr. DuPuy noted that the physical therapist had reported that Plaintiff was working in the 75-pound lifting range and was not yet ready to lift 100 pounds. Plaintiff was approved for more physical therapy to try to get into the 100-pound lifting range. *Page 8 
22. On February 26, 2007, Dr. DuPuy noted that Plaintiff was up to about an 85-pound lift in physical therapy and that Plaintiff could return to work with lifting no more than 100 pounds. Plaintiff remained out of work and continued to receive TTD compensation.
23. On March 26, 2007, Dr. DuPuy reported that Plaintiff was doing well with his low back symptoms, with no leg pain, no limp, good range of motion without pain and normal reflexes and muscle strength. Plaintiff had negative straight leg raise, full range of motion, and needed no pain medications. Dr. DuPuy wrote that Plaintiff was at maximum medical improvement, assigned a five percent PPI rating for Plaintiff's back and released Plaintiff to return to work at full duty with no restrictions.
24. Defendants offered Plaintiff a suitable job at his pre-injury wages. However, Plaintiff tested positive for marijuana on a pre-work drug test, and was unable to work for Defendants.
25. In April 2007, Plaintiff returned to work with DC's Roofing, a family business owned by his brother, Dereck Coley. Plaintiff previously worked for DC's Roofing before Defendants filed to terminate his benefits on a Form 24. Plaintiff did not tell Defendants that he had returned to work until during the Form 24 process.
26. Plaintiff worked with DC's Roofing off and on before he started working with Defendant-Employer. Dereck Coley paid Plaintiff about $15.00 an hour during 2007. The business was very busy during 2007. Plaintiff's hourly pay rate with DC's Roofing has varied depending on the amount of work the business has. For example, in 2008, Plaintiff was paid only about $8.00 per hour because of the economic downturn. As of November 2009, Dereck Coley had himself, Plaintiff, their father, and one other employee on the roofing crew. *Page 9 
27. As of the hearing before the Deputy Commissioner, Plaintiff continued to be employed by DC's Roofing and had been employed by them continuously since April 2007.
28. Plaintiff testified that the heaviest lifting he performed in this job was carrying bundles of shingles about 50 feet and that he did not carry the shingles up ladders. He stated he was given latitude to take breaks when he needed them and not to report to work when his low back or leg symptoms were flaring up. Plaintiff stated he was not physically able to undertake all the job functions of a roofer and sat around about half the time he was on the job. Plaintiff testified that he worked about 20 to 25 hours per week with DC's Roofing.
29. Plaintiff returned to Dr. Zucker on January 17, 2008 with complaints of pain related to the hardware in his right leg. On March 4, 2008, Plaintiff underwent a hardware removal procedure with Dr. Zucker, after which Dr. Zucker again released Plaintiff from his care.
30. Plaintiff did not seek any treatment for his back from March 26, 2007, until September 18, 2008 when he presented to the emergency room as a result of increased pain after lifting his child.
31. In September 2008, Plaintiff was playing with his children and, while he was lifting his daughter, felt a pop in his low back in the same location as he had felt pain following his compensable injury in this claim. He returned to Dr. DuPuy's office for treatment on September 23, 2008, with the pain down his left leg worse than his right.
32. On December 17, 2008, Plaintiff presented to Dr. John A. Welshofer at Carolina NeuroSurgery Spine for an independent medical examination related to his back pain. Upon physical examination, Plaintiff was assessed with lumbar degenerative disc. Dr. Welshofer *Page 10 
recommended a repeat MRI of the lumbar spine to determine the current status of the L4-5 disc herniation.
33. On February 2, 2009, Plaintiff underwent a lumbar MRI, which showed a disc herniation at L4-5 impacting the right and left L5 nerve roots and a small herniation at L3-4. On February 9, 2009, Dr. DuPuy reviewed the MRI results and noted that Plaintiff seemed to be symptomatic on the left side now, whereas the MRI revealed a central HNP L4-5, which abuts the L5 nerve roots with evidence of a right sciatic microdiskectomy but no evidence of a left-sided nerve root encroachment. Dr. DuPuy continued to feel that Plaintiff was at maximum medical improvement, and he again released Plaintiff from treatment at full duty with no restrictions.
34. Plaintiff returned to Dr. Welshofer the next day, February 10, 2009. Compared with the September 2006 MRI, Dr. Welshofer felt that the newer MRI showed the L4-5 herniation to be more left-sided, whereas the older MRI showed a right-sided herniation at L4-5. Upon physical examination, Dr. Welshofer also assessed Plaintiff with numbness in his feet and suggested a workup with a specialist.
35. On February 25, 2009, Plaintiff presented to the emergency department at Stanly Regional Medical Center at 10:35 a.m. with complaints of back pain he sustained from lifting heavy equipment while working with DC's Roofing.
36. Plaintiff again presented to the Emergency department at Stanly Regional Medical Center on April 23, 2009, May 21, 2009, June 2, 2009, and June 25, 2009 with complaints of back pain with pain radiating down his right leg. An MRI of his lower spine was taken on May 21, 2009 that showed a small broad-based central disc protrusion/herniation at L3-4. *Page 11 
37. On June 29, 2009, Plaintiff returned to Dr. Welshofer, who noted continued low back and bilateral leg pain. Dr. Welshofer diagnosed a moderate recurrent disc herniation at L4-5. Following that, Plaintiff underwent epidural steroid injections and ultimately was referred for a surgical consultation with Dr. Daniel Oberer, a neurosurgeon.
38. Plaintiff saw Dr. Oberer on August 27, 2009. Dr. Oberer recommended that Plaintiff do more physical therapy and stop smoking before pursuing any more surgery. He felt that Plaintiff could undergo a fusion from L3 to L5 if conservative treatment failed.
39. As of the hearing before the Deputy Commissioner, Plaintiff still had occasional swelling, with activity, in his lower right leg. He also continued to have low back symptoms.
40. Dr. DuPuy testified that it is reasonable to believe that Plaintiff's herniated disc at L4-5 was a direct result of the April 6, 2006 accident. Dr. DuPuy confirmed that Plaintiff had bilateral leg findings upon his initial examination on September 26, 2006 and that the herniation was large enough that it probably did affect both legs. As Dr. DuPuy further testified, the surgery he did on November 22, 2006, being a partial hemilaminectomy rather than a full laminectomy, visualized only the right side of the spine and not the left.
41. Dr. DuPuy further testified, the September 2008 incident in which Plaintiff had a flare-up of low back symptoms while lifting his daughter was a natural consequence of the original back injury Plaintiff sustained on April 6, 2006. Dr. DuPuy believed Plaintiff's flare-ups were myofacial in nature and were the result of the original injury, and his opinion in that regard held true even if Plaintiff had no flare-ups between March 2007 and September 2008. Even with Plaintiff's pain being more down the left leg than the right in September 2008, Dr. DuPuy believed the September 2008 flare-up was still related to the original injury. *Page 12 
42. Dr. Welshofer believed that the surgery performed by Dr. DuPuy did not address Plaintiff's left-sided findings. Given the size of Plaintiff's herniation and the nature of the surgery he underwent, Dr. Welshofer never would have had Plaintiff try to lift more than 50 pounds afterward and never would have released Plaintiff to unrestricted work, because the risk of re-injury was too high. Dr. Welshofer further testified that it is very rare for him to allow more than medium duty with this type of injury.
43. Dr. Welshofer agreed that the September 2008 and February 2009 lifting incidents were flare-ups of Plaintiff's original April 6, 2006 back injury, which never fully healed.
44. Dr. Welshofer opined and the Full Commission finds that Plaintiff is not at maximum medical improvement for his compensable injuries. Dr. Welshofer believed that Plaintiff needs a venous evaluation with a specialist for the swelling in his legs, which he believed was related to the crush injuries that Plaintiff sustained on April 6, 2006.
45. The Full Commission finds based upon the greater weight of the evidence that medical treatment for Plaintiff's compensable injuries is reasonably required to effect a cure, provide relief and/or lessen the period of Plaintiff's disability.
46. The Full Commission finds based upon the greater weight of the evidence that the pre-injury job offered to Plaintiff by Defendant-Employer in March 2007, following Plaintiff's release by Dr. DuPuy, was suitable employment. However, Plaintiff constructively refused this suitable employment by failing a drug test.
47. Plaintiff was initially represented in this claim by Susan E. Rhodes of the Law Offices of Michael A. DeMayo, LLP. She withdrew from representing Plaintiff in November 2006 and sought an award of attorney's fees of at least $1,800.00 and reimbursement of costs in the amount of $99.50. *Page 13 
48. Defendants did not unreasonably defend this claim.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident on April 6, 2006 to his right leg and low back while working for Defendant-Employer. N.C. Gen. Stat. § 97-2(6).
2. When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct." English v. J.P. Stevens Co.,98 N.C. App. 466, 391 S.E.2d 499 (1990); Roper v. J.P.Stevens Co., 65 N.C. App. 69, 308 S.E.2d 485 (1983), disc.review denied, 310 N.C. 309, 312 S.E.2d 352 (1984). In this case, Plaintiff's left leg condition is a direct and natural consequence that flows from his compensable April 6, 2006 injury. Id.
3. Neither the September 2008 incident lifting the child nor the February 2009 lifting incident at work with DC's Roofing constituted an intervening cause of Plaintiff's ongoing low back condition. Rather, each was a direct and natural result of Plaintiff's compensable April 6, 2006 low back injury. Starr v.Charlotte Paper Co., 8 N.C. App. 604 (1970).
4. Plaintiff's average weekly wage for purposes of this claim is $795.00. The per diem was paid to Plaintiff only when he had to stay overnight on an out-of-town job and was concordant with his actual hotel and meal expenses when he did so. As such, it was not an allowance made to Plaintiff in lieu of wages and specified as part of his wage contract. Thus, it *Page 14 
is not part of his earnings in calculating the average weekly wage. N.C. Gen. Stat. § 97-2(5); Greene v. Conlon Construction Co.,184 N.C. App. 364, 646 S.E.2d 652 (2007).
5. Plaintiff has the burden of showing he is disabled.Hendrix v. Linn-Corriher Corp.,317 N.C. 179, 185, 345 S.E.2d 374, 378 (1986). He can do this in one of four ways as outlined in Russell v. Lowes ProductDistrib., 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). Plaintiff has shown that he was disabled from April 6, 2006 through March 27, 2007. Id.
6. In order to meet the burden of proving continuing disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982).
7. Defendants offered Plaintiff suitable employment earning his pre-injury wages. However, Plaintiff was ultimately not hired for misconduct and fault, unrelated to his compensable injury, for which a non-disabled employee would ordinarily have been terminated by Defendant-Employer when Plaintiff tested positive for marijuana on a drug test. Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E. 2d 397 (1996). Accordingly, Plaintiff's termination constituted a constructive refusal of suitable employment. Id.
8. Under the Seagraves analysis, after an employer has proven that the employee's termination constitutes a constructive refusal of employment, an employee must then show that his inability to find other employment at wages comparable to those earned prior to the injury is due to the work-related disability. Seagraves v. AustinCo. of Greensboro, supra. In this case, Plaintiff has returned to work and has failed to show that any loss in wage earning capacity following his refusal of suitable employment is due to his compensable work injury. Id.; Russell v. Lowes ProductDistrib., 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). Therefore, *Page 15 
after March 26, 2007, Plaintiff failed to prove that he was disabled from employment due to the compensable injury and he is not entitled to further disability compensation. N.C. Gen. Stat. § 97-29.
9. As Plaintiff has not yet reached maximum medical improvement, Plaintiff is not yet entitled to benefits under N.C. Gen. Stat. § 97-31. Defendants are entitled to a credit for benefits paid after March 26, 2007 against any future disability benefits that may be awarded to Plaintiff. N.C. Gen. Stat. § 97-31; Collins v. Speedway Motor SportsCorp., 165 N.C. App. 113, 598 S.E.2d 185 (2004)
10. As Defendants did not unreasonably defend this claim, Plaintiff is not entitled to attorney fees or costs under N.C. Gen. Stat. § 97-88.1.
11. Plaintiff is entitled to have Dr. Welshofer designated as his treating physician for his compensable injuries and to have Defendants authorize and pay for the treatment that he recommends for such injuries, including but not limited to diagnostic testing and imaging, referrals, physical therapy, prescriptions, pain management modalities and mileage. To any extent that Defendants have not paid for the prior treatment Plaintiff has received for his compensable injuries with Dr. Welshofer, Plaintiff is also entitled to have Defendants pay for such treatment. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
12. Plaintiff is not entitled to an order directing Defendants to initiate vocational rehabilitation at this time. Id.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD *Page 16 
1. Plaintiff's claim for disability benefits after March 26, 2007 is denied.
2. Defendants are entitled to a credit for benefits paid following March 26, 2007.
3. Dr. Welshofer is hereby designated as Plaintiff's treating physician for his compensable injuries, and Defendants shall, subject to the limitations period of N.C. Gen. Stat. § 97-25.1, authorize and pay for the treatment that he recommends for such injuries, including but not limited to diagnostic testing and imaging, referrals, physical therapy, prescriptions, pain management modalities and mileage.
4. To any extent that Defendants have not paid for the prior treatment Plaintiff has received for his compensable injuries with Dr. Welshofer, Defendants shall pay for such treatment. If Plaintiff and/or any third-party payor has paid for any such treatment, then Defendants shall reimburse such payor in full.
5. Defendants shall pay the costs. As part of their costs, if they have not done so already, Defendants shall pay an expert witness fee to Dr. Welshofer in the amount of $936.00 or the amount actually billed, whichever is less.
This is the 3rd day of November 2010.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 17 
 S/_____________ LINDA CHEATHAM COMMISSIONER *Page 1